IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

United States of America
*ex rel*. Rayme M. Edler, M.D.
     Plaintiffs,
v.                         **Case 3:20-cv-05503-RV-HTC**

Escambia County
     Defendant.

_____/

## PLAINTIFF RELATOR'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Dr. Edler alleged Escambia County submitted claims for payment to the government for emergency medical transportation despite knowing that many employees who provided those services were not certified as Medicare and Florida require. Each claim related to these services is a false claim under the False Claims Act. 31 U.S.C. §§ 3729 *et seq*.

Four county officials identified in the Complaint as leading the frauds have been arrested and charged with felonies and misdemeanors related to the allegations raised by Dr. Edler. One has already pleaded no contest to falsifying the exact EMT and paramedic certificates at issue here. The others' cases are pending.

# **Contents**

I.  There has been no public disclosure............................................................1

II. Even if there were a public disclosure, Relator is an original source. ............6

III. The Complaint is not an impermissible "shotgun" pleading..........................7

IV. The Retaliation Claim is Plausible. ..............................................................13

    A.     The Complaint alleges Dr. Edler engaged in protected activity......... 15

    B.     Defendant knew of Dr. Edler's protected activities. .......................... 15

    C.     Defendant retaliated against Dr. Edler. .............................................. 15

V.  The Complaint Meets Rule 9(b)'s Particularity Requirement......................18

    A.     The Complaint pleads the who, what, and when. ............................... 18

    B.     The Complaint need not plead specific claims. ................................. 19

    C.     "On information and belief" allegations are acceptable. ................... 23

    D.     Identity of EMTs and paramedics are unnecessary for Rule 9(b)...... 25

    E.     Rule 9(b) requires an "indicia of reliability," not claims. .................. 26

VI.     If necessary, Relator will move for leave to amend. ...........................27

VII.    Conclusion.........................................................................................29

# Authorities

## Cases

*Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. College,* 77 F.3d 364 (11th Cir. 1996) .................................................................................12

*Bailey v. Janssen Pharmaceutica, Inc*., 288 Fed. Appx. 597 (11th Cir. 2008) ........13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)......................................................13

*Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238 (11th Cir. 2012) ...................................7

*Briggs for use & benefit of United States v. Quantitech, Inc.*, No. 2:19-CV-01690-ACA, 2021 WL 461694 (N.D. Ala. Feb. 9, 2021) ...................................................14

*Brown v. Morehouse Coll.*, 829 F. App'x 942 (11th Cir. 2020) ...............................14

*Cooper v. Blue Cross & Blue Shield of Fla., Inc*., 19 F.3d 562 (11th Cir. 1994) ......3

*Crispell v. Fla. Dept. of Children & Families*, No. 8:11-cv-1527-T-30EAJ, 2012 U.S. Dist. LEXIS 116965 (M.D. Fla. Aug. 20, 2012) ........................................13

*Fikes v. City of Daphne*, 79 F.3d 1079 (11th Cir. 1996) ...............................................12

*Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886 (8th Cir. 2000)..........16

*Hickman v. Spirit of Athens, Alabama, Inc.*, 985 F.3d 1284 (11th Cir. 2021)..........14

*Jackson v. Bank of Am., N.A*., 898 F.3d 1348 (11th Cir. 2018)...............................8

*Profit v. Rabon*, No. 1:19-cv-129-MW-GRJ, 2020 U.S. Dist. LEXIS 24794 (N.D. Fla. Jan. 9, 2020) ................................................................................................24

*Tavantzis v. Am. Choppers*, No. 6:14-cv-1519-Orl-40TBS, 2015 WL 6736753 (M.D. Fla. Nov. 4, 2015)...............................................................................................12

*Townsend v. Bayer Corp.*, 774 F.3d 446 (8th Cir. 2014)...........................................16

*U.S. ex rel. Atkins v. McInteer,* 470 F.3d 1350 (11th Cir. 2006) ...............................22

*U.S. ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340 (11th Cir. 2021) ........ 3, 4, 5

*U.S. ex rel. Bingham v. BayCare Health Sys.*, No. 8:14-cv-73-T-23EAJ, 2015 U.S. Dist. LEXIS 107220 (M.D. Fla. Aug. 14, 2015) ...................................................21

*U.S. ex rel. Brown v. Walt Disney World Co.*, 361 F. App'x 66 (11th Cir. 2010) ......3

*U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301 (11th Cir. 2002)19, 23, 26, 27

*U.S. ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190 (4th Cir. 2018) ......... 13, 14

*U.S. ex rel. Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936 (11th Cir. Aug. 15, 2003) ............................................................ 23, 27

*U.S. ex rel. Kunz v. Halifax Hosp. Med. Ctr.* 2011 WL 2269968 (M.D. Fla. June 6, 2011) ...................................................................................................................22

*U.S. ex rel. Lorona v. Infilaw Corp.*, No. 3:15-cv-959-J-34PDB, 2019 WL 3778389 (M.D. Fla. Aug. 12, 2019) ...................................................................................12

*U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217 (11th Cir. 2012).18

*U.S. ex rel. Michael A. Rehfeldt, Plaintiff, v. Compassionate Care Hosp. Gr. Inc.,* No. 5:19-CV-00304-TES, 2021 WL 2229057 (M.D. Ga. June 2, 2021)........................14

*U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805 (11th Cir. 2015).........................2

*U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300 (11th Cir. 2010)..................17

*U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C. Cir. 1994) 3, 4

*U.S. ex rel. Walker v. R & F Props. of Lake County, Inc.*, 433 F.3d 1349 (11th Cir. 2005) .......................................................................................................... 26, 27

*United States v. Choudhry*, 262 F.Supp.3d 1299 (M.D. Fla. 2017).............................12

*United States* v. *Health Mgmt. Assocs.*, 591 F. App'x 693 (11th Cir. 2014)..... 21, 27

*United States* v. *HPC Healthcare, Inc.*, 723 F. App'x 783 (11th Cir. 2018)............20

*Watts v. Fla. Int'l Univ.*, 495 F.3d 1289 (11th Cir. 2007) ........................................18

*Webb v. Compath, Inc.*, No. 5:03CV272-MCR/WCS, 2005 WL 8164786 (N.D. Fla. May 20, 2005), *rep. and recc. adopted*, 2005 WL 8164800 (N.D. Fla. June 21, 2005) ...................................................................................................................16

*Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313 (11th Cir. 2015)... 8, 9, 12

*Weinerth v. Ayers*, No. 2:10-cv-170-FtM-29SPC, 2010 WL 4955836 (M.D. Fla. Dec. 1, 2010) ..................................................................................................12

### Statutes

31 U.S.C. § 3729(a)(1)(A) ...............................................................................9, 10

31 U.S.C. § 3729(a)(1)(B) ...............................................................................9, 11

31 U.S.C. § 3730(e)(4)....................................................................................... passim

31 U.S.C. § 3730(h) ...........................................................................9, 11, 14, 16

42 U.S.C. § 1320a-7b(a) ......................................................................................10

42 U.S.C. § 1983 ..................................................................................................12

42 U.S.C. § 1985 ..................................................................................................12

Fla. Stat § 403.161 ...............................................................................................24

Fla. Stat. § 401.27 ........................................................................................ 10, 25

Fla. Stat. § 401.41 ................................................................................................24

Fla. Stat. § 831.01 ................................................................................................24

Fla. Stat. § 838.022 ...................................................................................... 24, 25

Fla. Stat. § 895.03 ................................................................................................24

### Other Authorities

Ctrs. for Medicare & Medicaid Servs., Sample Claim Form..................... 10, 22

### Rules

Fed. R. Civ. P. 10(b) ..........................................................................................9, 11

Fed. R. Civ. P. 12(b)(1) .....................................................................................1, 2

Fed. R. Civ. P. 12(b)(6) .............................................................................. 2, 13, 24

Fed. R. Civ. P. 9(b) .......................................................................................... passim

Fed. R. Evid. 20 ...................................................................................................24

### Regulations

42 C.F.R. § 410.41 ...................................................................................... 10, 25

# ARGUMENT

Escambia's Motion should be denied because the Complaint pleads facts with particularity that present a "plausible" claim for relief under the False Claims Act, as required by Federal Rules 8(a), 9(b), 10(b) and 12(b)(6). In addition, Defendant's public disclosure argument is completely without merit as it is premised on an old and inapplicable version of the statute.

## I.   There has been no public disclosure.

Defendant's Rule 12(b)(1) motion to dismiss the Complaint "to the extent that" the allegations are "based" on publicly disclosed information is a non-starter. Defendant's motion is premised on the wrong statute, the wrong Federal Rule, the wrong standard, and the wrong caselaw. The current version of the False Claims Act ("FCA") provides:

> **(e)(4)(A)** The court shall dismiss an action or claim under this section, unless opposed by the Government, **if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed**—
>> **(i)** in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>> **(ii)** in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>> **(iii)** from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4) (emphasis supplied).

1

However, the entirety of Defendant's argument is based on the pre-2010 version of this statute which provided that "[n]o court shall have *jurisdiction* over an action under this section based upon the public disclosure of allegations or transactions . . . ." Pre-2010 version of 31 U.S.C. § 3730(e)(4)(A) (emphasis supplied). The current statutory test is whether "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed." 31 U.S.C. § 3730(e)(4)(A). Defendant's mistake is but one reason this portion of the motion must be denied.[1]

First, the public disclosure bar is no longer jurisdictional. *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 810 (11th Cir. 2015) ("We conclude that the amended § 3730(e)(4) creates grounds for dismissal for failure to state a claim rather than for lack of jurisdiction."). There is no viable Rule 12(b)(1) motion here. This change from 12(b)(1) to 12(b)(6) is a difference that matters. Post-2010, the burden is on the defendant to prove their defense. *Id.* (approvingly quoting one of several decisions describing the post-2010 public disclosure bar as "effectively an affirmative defense.")

---

[1]     100% of Defendant's authorities pre-date the operative amendments. In fact, Defendant **quotes from the wrong version of the statute** when purporting to define an "original source." ECF 20 at 7.

Second, even applying the correct test and the correct Rule, there has been no public disclosure here. Defendant's recitation of the legal test for public disclosure is woefully incomplete.[2] The *Cooper* test is still a valid starting point, but it is far from the end of the analysis. The *Cooper* test first asks:

(1) have the allegations made by the plaintiff been publicly disclosed;
(2) if so, is the disclosed information the basis of the plaintiff's suit;
(3) if yes, is the plaintiff an 'original source' of that information.

*U.S. ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1353 (11th Cir. 2021), *quoting Cooper v. Blue Cross & Blue Shield of Fla., Inc*., 19 F.3d 562, 565 n.4 (11th Cir. 1994) (per curiam) *cert. denied*, No. 20-1463, 2021 WL 1951877 (U.S. May 17, 2021).

"So, under the *Cooper* framework, the first prong becomes dispositive where the plaintiff's allegations have not been publicly disclosed." *Bibby*, 987 F.3d at 1353. To analyze this issue under the current statute, the Eleventh Circuit has adopted the D.C. Circuit's *Springfield* formula for determining whether the allegations of fraud which support a Relator's claim have been publicly disclosed.

---

[2]     Defendant's reliance on "based in any part" from *U.S. ex rel. Brown v. Walt Disney World Co.*, 361 F. App'x 66, 68 (11th Cir. 2010) is misplaced. *Brown* no longer comports with the statutory text and the law of this Circuit. The statute now **permits** *qui tam* suits to proceed unless "**substantially the same** allegations or transactions as alleged in the action or claim were publicly disclosed." 31 U.S.C. § 3730(e)(4)(A) (emphasis added). The old, pre-2010 text barred suits "**based upon** the public disclosure" which is the source of the "based in any part" language in *Brown*.

Under that formula, one generally must present a submitted statement or claim (X) and the true set of facts (Y), which shows that X is untrue. These two things together allow the conclusion (Z) that fraud has occurred. There is no allegation of fraud under this formula unless each variable is present. Where only one element of the fraudulent transaction is in the public domain (*e.g.*, X), the *qui tam* plaintiff may mount a case by coming forward with either the additional elements necessary to state a case of fraud (*e.g.*, Y) *or* allegations of fraud itself (*e.g.*, Z).

*Id.* (internal citations and quotations omitted); *see also U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994).

Here, Defendant has failed to do anything other than recite an incomplete version of the *Cooper* test. Defendants do not actually assert or point the Court to the existence of ANY public disclosure—making it impossible for the Court to find that any information in the public domain is an "allegation" under the *Springfield* test.

At worst, the Complaint includes a reference to public reporting that documents Dr. Edler's pre-suit disclosure of information to various governmental authorities and the criminal enforcement activities that resulted from Relator's original information.[3] Compl. at ¶¶ 40, 72–73. These activities do not support

---

[3] "The reason for the public disclosure bar is fairly obvious. Without it, opportunistic relators—with nothing new to contribute—could exploit the FCA's qui tam provisions for their personal benefit." *Bibby*, 987 F.3d at 1353. This is not a concern here where any assertedly public disclosure **originated with Relator**.

Defendant's motion and instead comport with Dr. Edler's status as an original source. 31 U.S.C. § 3730(e)(4).

The Complaint cites two news articles but neither disclose the X, Y, and Z of the fraud allegation. The first reported Escambia's substandard emergency care and noted only that Dr. Edler questioned how training was done.[4] The word "fraud" does not appear in the article. Nor is there any mention of the government receiving or paying any bills for emergency services or of training, licensing, or certifications being falsified. The second article reports only that four Escambia employees had been arrested and charged with falsifying emergency services training records.[5] Again, there is no mention of billing, invoicing, or payments. None of these articles are an "allegation" of the fraud which might support the existence of a public disclosure. *Bibby*, 987 F.3d at 1354 (holding the disclosure of the amount of an alleged overcharge did not "publicly disclose the 'allegations.'"). Here, no claims—much less any false claims plus the true facts—were publicly disclosed.

---

[4]  *See* Compl. at ¶ 40 *citing* Jim Little, *Pensacola Nurse Fights to Change EMS Policies After Video of Son's Care at Crash Scene,* Pensacola News J. (Apr. 30, 2019), https://www.pnj.com/story/news/2019/04/30/escambia-county-ems-nurse-fights-change-after-video-sons-care-crash/3586888002.

[5]  *See* Compl. at ¶ 73.

Defendant references allegations which pre-date Dr. Edler's employment with Escambia. But it provided no indicia that this knowledge came from the narrow set of sources statutorily defined as public disclosures: "a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party . . . or other Federal report, hearing, audit, or investigation[,] or from the news media." 31 U.S.C. § 3730. Without pointing the Court to any source—much less a source defined by statute as a public disclosure—Defendant has failed to carry its burden as to this portion of its argument.

The claims raised in the Compliant are not "substantially the same" as any "allegations or transactions" which have been publicly disclosed and the motion must be denied as a matter of law. 31 U.S.C. § 3730(e)(4)(A).

## II.     Even if there were a public disclosure, Relator is an original source.

Even if the Court were to determine that "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed"—which they were not—the Court would still be required to deny the motion because Relator is an original source. The FCA explicitly permits the maintenance of *qui tam* suits where the Relator is an "original source" which is defined as a person who:

> either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who

has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4)(b). Here, Relator meets both prongs of the disjunctive statutory test.[6]

As alleged, Dr. Edler reported the frauds beginning in March 2019, before the first of the articles cited in the Complaint were published. Compl. at ¶¶ 4, 61–62, 64–65.[7] The Complaint also specifically alleges that Relator "voluntarily disclosed . . . to the Government before filing[]" exactly as required by the statute. *Id.* at ¶ 4. Because the well pleaded facts which appear in the Complaint must be accepted as true, there is simply no basis for Defendant's motion with respect to Dr. Edler's status as an original source. *See Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1240 (11th Cir. 2012) (requiring pleaded facts to be construed in favor of the plaintiff).

### III. The Complaint is not an impermissible "shotgun" pleading.

Defendant argues the Complaint is a "shotgun pleading." ECF 20 at 5–7. It is not. A shotgun pleading is one that is "calculated to confuse the 'enemy,' and the

---

[6]     Defendant has not identified any materials it contends "counts" as a public disclosure. Consequently, we assume, arguendo, the news articles cited in the Complaint are the basis for Defendant's argument.

[7]     *See also* Little, *supra* note 4.

court, so that theories for relief not provided by law and which can prejudice an opponent's case...can be masked." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Complaint here contains no such extralegal theories of recovery nor has Defendant identified any. Typically, a shotgun pleading contains a variety of contract and tort claims interwoven in a haphazard fashion. *See id.* The Complaint has none of these.

A paradigmatic shotgun pleading makes it "impossible for any Defendant to reasonably frame an answer." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1352 (11th Cir. 2018). *See Weiland* at 1325 (same). Importantly, nowhere does Defendant claim any pleading deficiency has prevented it from "reasonably fram[ing] an answer." *Id.* Instead, Defendant simply declares the Complaint a "shotgun pleading."

In fact, the closest Defendant comes to explaining the asserted shortcomings are to note that the Complaint contains a standard incorporation clause before each cause of action and uses "ambiguous language" to describe the nature of the retaliation Relator suffered. ECF 20 at 5–6. These nits do not make the Complaint an impermissible shotgun pleading. Indeed, the Eleventh Circuit in *Weiland* distinguished between improper incorporation clauses which roll the distinct allegations of one count "into every successive count on down the line" and the

proper incorporation of a well pleaded and well-organized "facts" section into the

individual causes of action. *Weiland*, 792 F.3d at 1324. The Complaint utilizes the

proper version of incorporation clauses and not the impermissible version.

Defendant is right that Rule 10(b) requires that "each claim founded on a

separate transaction or occurrence . . . must be stated in a separate count or

defense[]" *but only "[i]f doing so would promote clarity*[.]" (emphasis supplied).

The Complaint raises three interrelated claims all under the FCA:

- Escambia submitted false claims for payment for emergency services rendered by uncertified employees, 31 U.S.C. § 3729(a)(1)(A). ECF 1, Complaint ¶¶ 83 and 84.

- Escambia made, used, or caused to be made or used false records or statements related to its false claims, 31 U.S.C. § 3729(a)(1)(B). *Id.* ¶¶ 85 and 86.

- Escambia unlawfully retaliated against Dr. Edler after she attempted to stop or report the ongoing frauds, 31 U.S.C. § 3730(h). *Id.* ¶¶ 87–90.

Adding more headers to designate each of the three claims their own "Count"

would fail to add significant clarity to the allegations. This is true in part because

each claim is founded on the *same* transactions and occurrences. *See* F.R.C.P.

10(b).

The FCA makes it unlawful to submit a false claim to the government, but it

is also a violation of the FCA to make or use false documents in support of a claim.

Escambia has done both. In fact, Defendant's scheme to create false documents

(false EMT and paramedic certificates) is at the heart of its false claims and the allegations and claims in the Complaint.

Instead of training and certifying emergency services personnel, Escambia created fake records which created the false impression that proper certification had occurred when it had not. Complaint at ¶¶ 48–68, 72. Escambia not only permitted its uncertified employees to render emergency services, it also billed the government for the provision of those services. *Id.* at ¶¶ 76–77.

In connection with those bills, Escambia lied and falsely certified that the billed services complied "with all applicable Medicare and/or Medicaid laws, regulations, and program instructions." See Sample CMS Claim Form[8], and Compl. at ¶ 19, citing 42 U.S.C. § 1320a-7b(a)(1)–(2) (prohibiting false statements or misrepresentations of material facts concerning payment requests). Medicare only pays for emergency services rendered by persons credentialed in accordance with state law, and Florida requires the very training and certification many Escambia's employees did not have. 42 C.F.R. § 410.41(b); Fla. Stat. § 401.27(1). Escambia's claims for payment, knowingly made in reliance on the falsified training records, are each a false claim under 31 U.S.C. § 3729(a)(1)(A). And, because the falsified

---

[8]     CTRS. FOR MEDICARE & MEDICAID SERVS., Sample Claim Form, *available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/Downloads/CMS1500.pdf (last visited June 14, 2021).

training documents and certifications are "material" to Escambia's claims, those documents also violate Section 3729(a)(1)(B).

The first two claims, violation of 31 U.S.C. § 3729(a)(1)(A) and § 3729(a)(1)(B) arise out of the same scheme, transactions, and occurrences. *See* F.R.C.P. 10(b). As such, they need not be pleaded under separate headings.

Unlike many FCA cases, here the facts underlying the false *claims* for payment are inextricably bound with the false *records or statements*. The claims for payment are false because of the County's false certifications to Medicare that it complies with Medicare's laws, regulations, and program instructions. Compl. at ¶ 20.

As to the third claim, unlawful retaliation against Dr. Edler in violation of 31 U.S.C. § 3730(h), the Complaint narrates how Dr. Edler learned of Defendant's scheme, Compl. at 7–17, and how the county retaliated against her when the responsible people sought to hide their alleged crimes. Compl., ¶¶ 70, 79–81 (under subtitle "*Escambia County retaliated against Dr. Edler*").[9] The grouping of

---

[9] One of the then-alleged felons has since pled no contest to two misdemeanors. Exhibit 1, Stephen White Order of Judgment and Sentence. The others' cases are pending. Exh. 2, Criminal Dockets for Stephen White (showing seventeen charges and plea of no contest for two misdemeanors); James Bonoyer (fifty-seven charges); Leon Salter (ten charges); Katherine Kenney (fifteen charges).

these paragraphs under a subtitle gives Escambia adequate notice of this claim. *Weiland*, 792 F.3d at 1321–23.

Defendant's Motion relies on cases with multiple defendants and many claims.[10] In contrast, Dr. Edler has raised claims against a single defendant for false claims, false statements, and its retaliation against her. The simple complaint poses no unnecessary burden on the litigants or judicial resources. In a recent case, a plaintiff sued *five* defendants alleging violations under 42 U.S.C § 1983, 42 U.S.C. § 1985, and a state law conspiracy to commit First Amendment retaliation. *Seals v. Leath*, No. 3:19-cv-468-ALB-JTA, 2019 U.S. Dist. LEXIS 219240, at *17 (M.D. Ala. Dec. 18, 2019). Notwithstanding the greater complexity, that court considered and rejected the defendant's "shotgun" motion to dismiss. Here, as in *Seals*, "[i]t is far from impossible to know which allegations of fact are intended to support which claims; indeed, *it isn't even difficult*." *Id*. (emphasis supplied).

---

[10]    *Tavantzis v. Am. Choppers*, No. 6:14-cv-1519-Orl-40TBS, 2015 WL 6736753 (M.D. Fla. Nov. 4, 2015) (more than twenty-five defendants represented by six law firms); *Fikes v. City of Daphne*, 79 F.3d 1079, 1080 (11th Cir. 1996) (seven defendants and claims under First, Fifth, Ninth and Fourteenth Amendments to the United States Constitution); *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. College,* 77 F.3d 364, 366–67 (11th Cir. 1996) (six counts); *U.S. ex rel. Lorona v. Infilaw Corp.*, No. 3:15-cv-959-J-34PDB, 2019 WL 3778389, at *1 (M.D. Fla. Aug. 12, 2019) (five defendants, five counts); *United States v. Choudhry,* 262 F.Supp.3d 1299, 1306 (M.D. Fla. 2017) (10 defendants, 2 distinct kickback schemes); *Weinerth v. Ayers*, No. 2:10-cv-170-FtM-29SPC, 2010 WL 4955836, at *3 (M.D. Fla. Dec. 1, 2010) (two defendants, federal allegations, and two factually and legally distinct state claims).

The real issue is whether this sole defendant is on notice of the claims against it. *Bailey v. Janssen Pharmaceutica, Inc.*, 288 Fed. Appx. 597, 603 (11th Cir. 2008). *See also Crispell v. Fla. Dept. of Children & Families*, No. 8:11-cv-1527-T-30EAJ, 2012 U.S. Dist. LEXIS 116965, at *5 (M.D. Fla. Aug. 20, 2012) (rejecting "shotgun" characterization as the complaint sufficiently put defendant on notice of the claims against it).

Finally, by arguing that only the retaliation claim is implausible (see below), Defendant admits that the other claims are plausible, and sufficient to put it on notice of the claims against it.

## IV. The Retaliation Claim is Plausible.

Defendant argues the retaliation claim (but not the rest of the Complaint) is *implausible*. ECF 20 at 12–14. To grant Defendant's 12(b)(6) Motion, this Court must conclude that Relator's retaliation allegations do not even "suggest" the possibility that a jury could believe them to be true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

The Eleventh Circuit has not yet determined if the 2010 amendments to the FCA necessitate a change in the pleading standard which applies to FCA retaliation claims. However, that Court has twice noted the Fourth Circuit's decision in *U.S. ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 203 (4th Cir. 2018). *See*

*Hickman v. Spirit of Athens, Alabama, Inc.*, 985 F.3d 1284, 1288 (11th Cir. 2021);

*Brown v. Morehouse Coll.*, 829 F. App'x 942, 945 (11th Cir. 2020).[11]

> Under *Grant*,
>
> to sufficiently plead a § 3730(h) retaliation claim and thus survive a motion to dismiss, a plaintiff must allege facts sufficient to support a "reasonable inference" of three elements: (1) he engaged in protected activity; (2) his employer knew about the protected activity; and (3) his employer took adverse action against him as a result.

*Grant,* 912 F.3d at 200 (holding the heightened pleading standard of Rule 9(b) does not apply) (internal citation omitted).

The Complaint easily meets this standard here. The FCA protects an employee who takes "lawful acts . . . in furtherance of an [FCA] action . . . or other efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h)(1). The Complaint alleges several actions Dr. Edler took both to further this case and as part of her attempt to stop violations of the FCA. The Complaint also alleges that Defendant knew and then took adverse action against her as a result. Compl. ¶¶ 47, 51-52, 56-57, 62-67, 70, 79–81.

---

[11] This Circuit's District Courts' decisions rendered after *Hickman* appear to adopt the standard expressed in *Grant*. *See, e.g.*, *U.S. ex rel. Michael A. Rehfeldt, Plaintiff, v. Compassionate Care Hosp. Gr. Inc.,* No. 5:19-CV-00304-TES, 2021 WL 2229057, at *5 (M.D. Ga. June 2, 2021); *Briggs for use & benefit of United States v. Quantitech, Inc.*, No. 2:19-CV-01690-ACA, 2021 WL 461694 (N.D. Ala. Feb. 9, 2021).

### A. The Complaint alleges Dr. Edler engaged in protected activity.

Dr. Edler met with County leadership to report "protocol violations, insubordination, falsifying certifications, policy updates, employee files, and the work environment at public safety." Compl. ¶ 47. She reported to county leadership, including to the County Commission, the exact training certification frauds at issue here. Compl. ¶¶ 49, 51–52, 56–57, 63–64.

She also attempted to stop the ongoing fraud by reporting these deficiencies to the Florida Department of Health which has the power to prevent Escambia's non-certified employees from serving in a medical capacity. Compl. ¶¶ 61, 65. Preventing non-certified people from performing emergency medical services would have terminated the false claims for their work.

### B. Defendant knew of Dr. Edler's protected activities.

Of course, Dr. Edler's many internal complaints and attempts to stop the fraud were known by Escambia, but Escambia was also aware of her external efforts. Compl. ¶¶ 62, 66.

### C. Defendant retaliated against Dr. Edler.

The Complaint alleged Escambia began retaliating against Dr. Edler "immediately after Dr. Edler's identification of criminal and civil violations." Compl. ¶ 67. The harassment escalated from there. ¶¶ 70, 79–81.

Defendant's argument that absent a firing, demotion, or suspension, there has been no actionable retaliation under the FCA is simply wrong. The statute prohibits "harassment" and "any other manner [of] discriminat[ion] against in the terms and conditions of employment[.]" 31 U.S.C. § 3730(h)(1). "An employer undertakes a materially adverse action opening it to retaliation liability if it does something that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *U.S. ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 203 (4th Cir. 2018).

The law also provides for the award of "compensation for any special damages sustained as a result of the discrimination[.]" 31 U.S.C. § 3730(h)(2). "Damages for emotional distress caused by an employer's retaliatory conduct plainly fall within this category of special damages." *Hammond v. Northland Counseling Ctr., Inc.*, 218 F.3d 886, 893 (8th Cir. 2000) (internal quotation marks omitted); *accord Townsend v. Bayer Corp.*, 774 F.3d 446, 466–67 (8th Cir. 2014) (affirming award of emotional distress damages); *Webb v. Compath, Inc.*, No. 5:03CV272-MCR/WCS, 2005 WL 8164786, at *3 (N.D. Fla. May 20, 2005), *rep. and recc. adopted*, 2005 WL 8164800 (N.D. Fla. June 21, 2005) (permitting retaliation damages for "damage to Plaintiff's personal credit").

Taken together, the allegations and the law make clear that the retaliation allegations meet the low bar of plausibility.

> If an employee's actions, as alleged in the complaint, are sufficient to support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a *qui tam* action by the employee, then the complaint states a claim for retaliatory discharge under § 3730(h).

*U.S. ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304 (11th Cir. 2010).

Defendant's fear of being sued is palpable in the Complaint and the fear was well grounded. Besides the financial costs of losing a FCA case, each individual involved in the falsification of training documents and the provision of substandard medical care are exposed to substantial personal jeopardy. Already, four of the individuals responsible for the scheme have been charged with felonies. Stephen White has pleaded no contest to two misdemeanors for falsifying the exact records at issue in this case. Exh. 1. In addition, after the Complaint was filed, the Florida Department of Health took action against the licenses of the individuals responsible for the frauds at issue here. There can be no doubt that the individuals responsible for the frauds Dr. Edler uncovered and attempted to stop had the motivation to act against her to protect not only the county but their own liberty and financial interests.

When viewing the complaint broadly and drawing all reasonable inferences in

Relator's favor, the retaliation allegations state "enough facts to raise a reasonable

expectation that discovery will reveal evidence of the necessary element[s]." *Watts

v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007) (quoting *Twombly*, 550

U.S. at 545).

## V.     The Complaint Meets Rule 9(b)'s Particularity Requirement.

Defendant argues that the Complaint fails to meet Rule 9(b) 's particularity

requirement by failing: (A) to allege the false claims' *who*, *when*, and *how*; (B)

failing to identify specific claims; (C) failing to identify employees who lacked

certificates, and (D) by using "upon information and belief" allegations (iv). ECF

20 at 1, 8–11. Contrary to Defendant's arguments, the Complaint meets the

pleading standard set out in Rule 9(b).

### A.     The Complaint pleads the who, what, and when.

The particularity requirement is satisfied where a complaint alleges "facts as

to time, place, and substance of the defendants' alleged fraud, specifically the

details of the defendants' allegedly fraudulent acts, when they occurred, and who

engaged in them." *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217,

1222 (11th Cir. 2012).

The Complaint lays out Defendant's false claims in a readily understandable manner while providing sufficient detail to permit Defendant to formulate a defense. It alleges:

- Who:  The sole defendant, Escambia County, and detailing activities of named management personnel, including those charged with felonies for falsifying and forging paramedic and EMT certifications. Complaint ¶¶ 29–72.

- When:  Before 2014 and through the present (¶ 28), and detailing incidents in 2014 (¶¶ 29–37), 2016 (¶¶ 38–39), 2017 (¶¶ 40–43, and 64), 2018 (¶¶ 44–57, and 64), 2019 (¶¶ 58–68), and 2020 (¶¶ 70-73).

- What/how:  Detailing what the County did. ¶¶ 2, 29–72.

### B.    The Complaint need not plead specific claims.

The Eleventh Circuit has *never* required a complaint to provide specific false claims submitted to the government; all it has required is that a complaint contain "some indicia of reliability" to support the allegation that false claims were submitted.  *See U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002) (cited by Defendant). The relator's problem in *Clausen* was *not* that he failed to identify specific claims, but that he failed to explain *why* he believed such claims were submitted. *Id.* Indeed, the majority in *Clausen* criticized the dissent for suggesting that it was requiring any particular type of information to satisfy Rule 9(b).  *Id.* at 1312, n.21. *Clausen* thus expressly rejected the idea that it was creating a laundry list of details that had to be included to satisfy Rule 9(b). It

held Rule 9(b) requires the "circumstances constituting fraud or mistake" be pleaded with particularity, in order to (1) "protect defendants against spurious charges" and (2) give defendants notice of "the precise misconduct with which they are charged." *Id.* at 1310 (internal quotation marks and alterations omitted).

Post-*Clausen*, the Eleventh Circuit refined its analysis of Rule 9(b) as it relates to False Claims Act (FCA) complaints. And as shown by the cases cited by Defendant, even where the Eleventh Circuit has dismissed complaints under Rule 9(b), it has reaffirmed that identifying specific false claims is "one way"—but not the only way—to satisfy 9(b). *United States v. HPC Healthcare, Inc.,* 723 F. App'x 783, 789 (11th Cir. 2018). In *HPC Healthcare*, the Eleventh Circuit reaffirmed that relators need only plead "some indicia of reliability" that false claims were submitted. *Id.*

> Providing exact billing data—name, date, amount, and services rendered—or attaching a representative sample claim is *one way* a complaint can establish the necessary indicia of reliability that a false claim was actually submitted. However, *there is no per se rule that an FCA complaint must provide exact billing data or attach a representative sample claim*.

> Under this Court's nuanced, case-by-case approach, other means are available to present the required indicia of reliability that a false claim was actually submitted. Although *there are not bright line rules, our case law has indicated that a relator with direct, first-hand knowledge of the defendants' submission of false claims gained through her employment with the defendants* may have a sufficient basis for asserting that the defendants actually submitted false claims.

*United States* v. *Health Mgmt. Assocs.*, 591 F. App'x 693, 704 (11th Cir. 2014) (internal citations omitted) (emphasis added).

Dr. Edler pleaded more than just "some indicia of reliability" here. She pleaded direct, first-hand knowledge of Escambia's false claims and false statements. ¶¶ 16, 27, 28, 75.

Further, she alleged Medicare pays Escambia County approximately $4.6 million per year for Escambia's emergency transportation services). Complaint, ¶¶ 76–78 (alleging CMS public data). *See U.S. ex rel. Bingham v. BayCare Health Sys.*, No. 8:14-cv-73-T-23EAJ, 2015 U.S. Dist. LEXIS 107220, at *12 (M.D. Fla. Aug. 14, 2015) (denying motion to dismiss where "the relator relies on information from the Centers for Medicare & Medicaid Services to allege that BayCare submitted claims . . . .").

Detailed allegations regarding individual claims are not relevant to the circumstances here because the claims are tainted by external facts: EMTs and paramedics' legally mandated certifications (or lack thereof). "A plaintiff must satisfy Rule 9(b) with respect to the *circumstances* of the fraud he alleges—but not as to matters that have no relevance to the fraudulent acts." *HMA*, 591 Fed. App'x at 708–09 (emphasis added). *See also U.S. ex rel. Atkins v. McInteer,* 470 F.3d 1350,

1358 (11th Cir. 2006) ("there is no *per se* rule that a [False Claims Act] complaint must provide exact billing data or attach a representative sample claim.").

This makes sense because Medicare claims filed by ambulance providers identify the provider (such as Escambia), the service date, the claim code, e.g. A0427 (emergency ambulance transportation with advanced life support), the amount it seeks, *and certifies compliance with Medicare's rules and regulations.* But the claims do not identify employees who staff the ambulances.[12]

The Complaint alleges these certifications are false because Escambia created fraudulent documents attesting to training and certifications that never occurred. Complaint, ¶¶ 47–52, 56, 63–64, 72. Defendant is on notice of the nature of the fraud allegations against it without individualized claims data and that data would not materially enhance the pleading of the "circumstances of the fraud." *HMA*, 591 Fed. App'x at 708–09; *U.S. ex rel. Kunz v. Halifax Hosp. Med. Ctr.*, 2011 U.S. Dist. LEXIS 59949, 2011 WL 2269968, at *8 (M.D. Fla. June 6, 2011) (Persnell, J.) ("Rule 9(b) exists to prevent spurious charges and provide notice to defendants of their alleged misconduct, not to require plaintiffs to meet a summary judgment standard before proceeding to discovery.").

---

[12]  CTRS. FOR MEDICARE & MEDICAID SERVS., Sample Health Insurance Claim Form, CMS.gov, *available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/Downloads/CMS1500.pdf (last visited June 14, 2021).

## C. "On information and belief" allegations are acceptable.

"Rule 9(b)'s heightened pleading standard may be applied less stringently . . . when specific 'factual information [about the fraud] is peculiarly within the defendant's knowledge or control.'" *U.S. ex rel. Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (allowing pleading based upon "information and belief" despite failure to identify a specific false claim). *See also U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1314 n.25 (11th Cir. 2002) (recognizing "a more lenient pleading standard" is appropriate under Rule 9(b) when "evidence of fraud [i]s uniquely held by the defendant" provided that "the complaint . . . set[s] forth a factual basis for such belief") (internal quotation omitted).

Here, the information Defendant complains was not pleaded is "peculiarly within the defendant's knowledge or control." *Hill v. Morehouse Med. Assocs.*, 2003 WL 22019936, at *3. Even the State of Florida asserts that it is beyond a reasonable doubt that Escambia concealed, covered up, destroyed, mutilated, and altered the true records.

Florida arrested four officials of the County's Emergency Management senior management for falsifying EMT/paramedic certification. Compl. at ¶ 72. Public arrest records include the sworn affidavits of an FDLE investigator and a

state judge's approval.[13] The below chart summarizes these charges that plausibly support the "information and belief" allegations and show the information is "peculiarly within the defendant's knowledge or control."

| Criminal Charges (Exh. 2) | *Captain in Charge of Training,* Bonoyer | *Section Chief / paramedic supervisor*, Kenney | *Deputy Chief of EMS Ops.*, Salter | *Chief EMS Ops.,* White [14] |
|---|---|---|---|---|
| **Conceal information re medical transportation**, Fla. Stat. 401.41(1)(c) | 1 | 1 | | |
| **Official misconduct re false or fraudulent claims** to procure or renew a certificate, Fla. Stat. 401.41(1)(d) | 1 | 3 | 2 | 2 |
| **False statements, certifications**, Fla. Stat 403.161(1)(c) | | | 2 | |
| **Forgery**, Fla. Stat 831.01 or .02 | 19 | 5 | 3 | 6 |
| Public servant **falsify official documents**, Fla. Stat. 838.022(1)(a) | 22 | 5 | 3 | 8 |
| **Concealing, covering up, destroying, mutilating, or altering any official record or official document,** Fla. Stat. 838.022(1)(b) | 1 | | | 6 |
| **Obstruct, delay comm. involving govt. entity,** Fla. Stat. 838.022(1)(c) | 1 | 1 | | |
| Racketeering, Fla. Stat. 895.03 | | 1 | | 1 |

---

[13]    A court considering a Rule 12(b)(6) motion may take judicial notice of adjudicative facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(a)–(b). *See Profit v. Rabon*, No. 1:19-cv-129-MW-GRJ, 2020 U.S. Dist. LEXIS 24794, at *1 n.1 (N.D. Fla. Jan. 9, 2020) (taking judicial notice of available public record pertaining to pending state charges).

[14]    Mr. White has since pled no contest to "Knowingly mak[ing] false or fraudulent claims to procure, attempt to procure, or renew a *certificate*, license, or permit. Fla. Stat. 401.41(1d)." Exh. 1. The others' cases are still pending. Exh. 2.

Most of the charges involve § 838.022(1), hiding the alleged certification frauds.

*Official Misconduct*
(a)  Falsifying, or causing another person to falsify, any official record or official document;
(b)  *Concealing, covering up, destroying, mutilating, or altering* any official record or *official* document, except as authorized by law or contract, or causing another person to perform such an act;
(c)  *Obstructing, delaying, or preventing* the *communication of information* relating to the commission of a felony that directly involves or affects the government entity served by the public servant or public contractor.

Fla. Stat. § 838.022(1) (emphasis supplied).

The Chapter 401 Medical Transportation charges are especially relevant because Florida requires ambulances staffed by "certified" personnel. Fla. Stat. § 401.27(1). *See* 42 C.F.R. § 410.41(b) (requiring state-certified staff).

## D.    Identity of EMTs and paramedics are unnecessary for Rule 9(b).

It is unfortunate that the parties and this Court must spend time on an issue not really in dispute in this case—the identity of personnel whose false EMT and paramedic certifications tainted Defendant's Medicare claims. The information may be useful to calculate damages, but it is unnecessary to alert the County of the circumstances of its frauds.

Further, county officials have been charged with not only forging and falsifying certification-related documents, but also *concealing* these records and

documents. Defendant's demand for the names it *actively concealed* is precisely the "impossible" information the *Clausen* court warned against. )

> The dissent suggests we ask for all of this information, and thus "ask[] for the impossible." To the contrary, this discussion merely lists *some of the types of information that might have helped Clausen state an essential element of his claim with particularity but does not mandate all of this information for any of the alleged claims.*

*U.S. ex rel. Clausen* v. *Lab. Corp. of Am.*, 290 F.3d 1301, 1312 n.21 (11th Cir. 2002).

As the case progresses, Defendant will doubtlessly assert factual defenses. One thing the Court can be certain of, however, is that Defendant will not assert, as a factual matter, that it never submitted claims to Medicare, or that all employees who provided services relating to these claims were properly certified. In fact, it cannot, as the (former) Chief of EMS Operations has already pleaded no contest to charges of falsifying these very certifications. Exh. 1.

### E.    Rule 9(b) requires an "indicia of reliability," not claims.

The ultimate question is whether a relator's allegations are "sufficient to explain why [the relator] believed [the defendant] submitted false or fraudulent claims for services rendered." *U.S. ex rel. Walker v. R & F Props. of Lake County, Inc.*, 433 F.3d 1349, 1360 (11th Cir. 2005). In *Walker*, the Eleventh Circuit upheld a complaint because it explained why the relator—an insider nurse—believed claims were submitted, even though she did not identify any particular claims. *Id.*

*Walker,* like the unpublished *Hill*[15] and *HMA*[16] decisions, was perfectly consistent

with the prior *Clausen* decision, which recognized that a complaint could be

upheld if it provided sufficient indicia of reliability supporting the allegation that

false claims were submitted. *Walker*, 433 F.3d at 1360. Here, the Complaint more

than sufficiently explains why insider Dr. Edler asserts that false claims were

submitted: the required training was not done, the required certifications were

falsified, and Medicare nevertheless paid millions of dollars for non-compensable

services. *See e.g.,* Compl. ¶¶ 27, 37, 39, 43, 48, 50-52, 56-57, 63-64, 72, 76-78.

## VI.    If necessary, Relator will move for leave to amend.

If the Court finds the Complaint deficient, Plaintiff should be allowed to

move for leave to amend. *Bryant v. Dupree*, 252 F. 3d 1161, 1163 (11th Cir. 2001)

(directing that leave to amend shall be freely given when justice so requires); *see*

*also Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 603 (11th Cir. 2008)

(holding striking a complaint and requiring a more definite statement and not

dismissal is the proper remedy for an impermissible shotgun complaint).

---

[15]    *U.S. ex rel. Hill v. Morehouse Med. Assocs.*, No. 02-14429, 2003 U.S. App. LEXIS 27956, at *13, (11th .Cir. Aug. 15, 2003) (relaxing 9(b) standard where details are in documents "exclusively within the defendant's possession.").

[16]    *United States* v. *Health Mgmt. Assocs.*, 591 F. App'x 693, 704 (holding 9(b) pleading standard does not apply to "matters that have no relevance to the fraudulent acts.").

Any proposed First Amended Complaint attached to a motion for leave to amend would add the below organizational and factual details:

- Public Disclosure: Detail Dr. Edler's prefiling communications with Michael Biasello of this district's U.S. attorney's office around February 2020. Regarding any "publicly disclosed allegations or transactions" identified by this Court, that she "materially adds" to those disclosures by providing key insider information about the timing and operation of Defendant's fraud, persons involved, steps taken to conceal the fraud, and documents which reveal the truth.[17]

- Shotgun pleadings: Break each cause of action into a separate heading with additional factual references and allegations.

- Particularity: Additional details regarding the actions of Wood, Salter, Kenney, Bonoyer and the documents and training events they falsified,.

- Retaliation: Further detail Escambia's retaliatory acts including:

  o Treating Dr. Edler differently than similarly situated employees when it comes to providing legal defense and expense coverage and providing appropriate transportation.

  o Meritless "harassment" charges and other retaliatory HR actions such as changing Dr. Edler's working conditions, required hours, and responsibilities.

  o Coordination between Escambia leadership and personnel with private citizens for the purpose of harassing Dr. Edler in public forums.

  o Escambia's pending termination of Dr. Edler.

---

[17] The Florida Department of Law Enforcement and a state court judge appear to agree that Dr. Edler possesses key non-public information about Defendant's frauds. Her knowledge forms a component of the arrest affidavits/warrants detailing Escambia's employees' roles in the very frauds at issue here.

- Knowledge: Allegations that Escambia overlooked training/certification deficiencies because it operated emergency services for the revenue.[18]

## VII. Conclusion

Escambia cannot credibly claim it is not aware of the nature of Relator's claims. To its credit, it hardly attempts to so argue. Rather, it identifies purported technical deficiencies—and says that Federal Rules require more.

But the overarching question is not whether any particular piece of information is or is not present; rather, the question for the Court is whether there is enough information in the Complaint to put Escambia on notice of the nature of plausible allegations against it. That answer, in short, is "yes."

---

[18] Commissioner Jeff Bergosh explained why the County runs emergency services itself, rather than a private contractor: "It's an enterprise fund for us." He then repeated *three* times in the next minute: "**It generates revenue for us**," and then summarized: "Our guys should be doing it because **it generates revenue**." ECTV, *Oct. 15, 2020 BCC Regular Meeting*, at 16:30–17:30 (Oct. 15, 2020), https://escambiacountyfl.new.swagit.com/videos/87252.

Respectfully submitted,

/s/ *Jonathan Kroner*
FBN 328677
Jonathan Kroner Law Office
6001 N Ocean Dr., Ste. 806
Hollywood, FL 33019-4617
305.310.6046
jk@FloridaFalseClaim.com


Law Offices of Darth M. Newman LLC
Darth M. Newman
1140 Thorn Run Rd., #601
Coraopolis, PA 15108
412.436.3443
darth@dnewmanlaw.com
(admitted *pro hac vice*)

Attorneys for Qui Tam Plaintiff


## LR 7.1 (F) Certificate of Word Count

I certify the LR 7.1 (F) word count of 7,699 words, and I relied on MS Word's count for this certification.

/s/ *Jonathan Kroner*


## Certificate of Service

I certify I electronically filed the foregoing document with the Clerk of Court using CM/ECF on the date stamped above to be served on all counsel of record.

/s/ *Jonathan Kroner*