IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

United States of America,
*ex rel.* Rayme M. Edler, M.D.,

     Plaintiff-Relator,          Case No. 3:20-CV-05503-MCR-HTC

v.

Escambia County,

     Defendant.

---

**PLAINTIFF-RELATOR'S MOTION TO COMPEL AND FOR SANCTIONS
WITH MEMORANDUM IN SUPPORT**

---

Plaintiff-Relator Dr. Edler moves to compel the production of documents and for sanctions for non-compliance with discovery orders. The requests were propounded, in some cases, more than a year-and-a-half ago; and yet they remain unsatisfied. These delays, whether justified or not, have impeded Dr. Edler's ability to prosecute her case—e.g., to take depositions, to calculate damages, and to produce expert reports. Dr. Edler therefore seeks the Court's assistance to obtain claims data, dispatch data, work-hours reports, and patient records as sought in Request Numbers III-1, IV-6, and V-1 through V-3, and Ordered at ECF Nos. 61 and 88. The requested sanctions do not dispose of any claim or defense.

## <u>N.D. FLA. LOC. R. 7.1(B) COMPLIANCE CERTIFICATE</u>

Undersigned counsel conferred with defense counsel through numerous calls and emails, including those outlined below. Additionally, many of these discussions were also raised with the Court in the parties' ongoing joint discovery reports. Defendant opposes this motion.

## <u>MEMORANDUM</u>

## <u>RELEVANT BACKGROUND</u>

## I.    CASE POSTURE

Dr. Edler's initial *qui tam* complaint alleged Defendant Escambia County defrauded the government and risked patients' lives by knowingly dispatching, and billing for services provided by, ambulance personnel who were not properly certified in compliance with state and federal law. Dr. Edler's reports to Florida's Department of Health led to the criminal prosecution of four Escambia Executives. ECF Nos. 63-4 at 1 and 3, 63-5 to -9 (criminal exhibits). After the Court lifted the seal, Dr. Edler served the complaint, the County moved to dismiss, and the Court summarily denied the motion in August 2021. ECF No. 26. Dr. Edler amended her complaint in December 2021 to allege additional retaliation in connection with her termination. 1st Am. Compl., ECF No. 38.

In September 2022, Dr. Edler filed her second amended complaint, adding a new Count II, alleging the County submitted false claims to the federal Government

miscoded at a higher level of service than what was provided. 2d Am. Compl., ECF No. 59 (alleging non-emergencies claimed as emergencies and basic life support billed as advanced). The County moved to dismiss Count II. That motion is fully briefed and pending.

The parties have been engaging in discovery, with corresponding motion practice, since fall 2021. The Court ordered the parties to submit joint discovery status reports monthly beginning January 2023. ECF No. 68. On June 7, 2023, the Court granted the parties' joint motion to further extend the remaining deadlines. ECF No. 105. Much of what is described herein is also discussed in those joint reports and in that joint motion. *See, e.g.*, ECF No. 102.

## II.    DISCOVERY REQUESTS AT ISSUE

Ripe for the Court's consideration are these longstanding discovery disputes:

### A)    Request Sets III and IV

#### 1.    *Non-Compliance with this Court's Order on Request III-1*

On November 22, 2021, Dr. Edler served her third set of requests for documents, which included a request for claims data, work hours reports, dispatch records, and patient records relating to twelve targeted employees of the more than 300 relevant county employees during identified time periods. *See* Def.'s RFP Resp. No. III-1, ECF No. 49-1. Significantly, the Florida Department of Law Enforcement ("FDLE") identified these employees as having provided ambulance services

without the minimal training and certifications mandated by Florida and Federal law to ensure patient safety. FDLE Invest. Rep't 260–63, ECF No. 63-4 (PE-14-0072 as *Operation Pencil Whip*).[1] The County responded with numerous objections and stated that eight of the twelve non-certified employees identified in Dr. Edler's request responded to "over 24,180" calls. Def.'s RFP Resp. No. III-1, ECF No. 49-1 (listing 24,180 responses by eight employees as "some of the calls"). It produced no responsive documents.

Dr. Edler moved to compel after extensive negotiations failed. Rel.'s Mot. to Compel, ECF No. 49.[2] The County initially opposed, repeating its burden arguments based in part on the number of billing records for responses to "over 24,180 calls." ECF No. 51 at 4. After twice delaying the scheduled hearing by representing it would seek to moot the motion, the County conceded. ECF 61 at 1. The County filed a consent motion on the eve of the hearing with an attached proposed stipulated order

---

[1] As one employee explained to FDLE's investigator, *pencil whipping* is "you get something that you didn't earn," "you got a card and you didn't go to a class." FDLE Invest. Rep't at 88, ECF No. 63-4.

[2] Dr. Edler also moved to compel the County's compliance with its obligations under Fed. R. Civ. P. 34(b)(2)(E)(i), identifying which records in its document dump were produced in response to which requests, ECF No. 56, which the Court also granted. The County attempted to satisfy the second portion of the Court's order with its amendments, but much of the identified documents were non-responsive. *See* Rel.'s 11/30/22 Ltr. 8–9, Ex. A; *see also infra* Background Part II.A)3.

agreeing, in part, to waive its objections and produce documents within 14 days. Consent Mot., ECF Nos. 60, 60-1.

This Court, however, did not sign the parties' barebones proposed order, and instead, it *overruled* the County's overbreadth objections, found the request to be relevant and proportionate, and provided a detailed justification for compelling production. Order at 2–4, 6, ECF No. 61. The Court ordered the County to produce responsive documents within **14 days**.[3] *Id.* at 6. Alternatively, the Court permitted the parties to stipulate facts that would "obviate[e] the need for production of some of the responsive documents" within the same 14-day period. *Id.* at 7.

The County failed to comply with the Court's Order. It also amended its responses to reassert nearly verbatim the waived and overruled objections from its original response. *See* Def.'s RFP 2d Supp. Resp. No. III-1, Ex. J. The material change to the County's responses was the deletion of its earlier representation that eight of the twelve employees responded to more than 24,180 ambulance calls.

## 2. *Request No. IV-6*

On May 30, 2022 (before the Court issued its September 30, 2022 Order), Dr. Edler propounded another request for the same categories of documents and data sought in Request III-1 relating to five additional employees. Similar to the previous

---

[3] Notably, the County proposed this very same timeline in its draft consent order. *See* ECF No. 60-1.

dozen, the FDLE's investigation concluded that these five employees also lacked

credentials as instructors or Paramedics.[4] This request reads:

> [**REQUEST NO. IV-6**:]
>
> For each individual listed below, and for the dates listed below, please produce all documents which are, refer to, or reflect work schedules; provider and/or instructor training; duty rosters; patient run reports; Computer Aided Dispatch; reports related to disaster relief, mutual relief, and special events; daily shift summaries; daily activity logs; daily supervisor reports; leave slips; and claims made to government payors, submitted CMS Series 1500 Forms, and Escambia County Board of County Commissioners Patient Care Records for services provided in whole or in part by each individual during the time periods listed below. For the purposes of this Request, government payor shall mean any healthcare funding source or program funded in whole or in part by federal or state monies including Medicare, Tricare, Medicaid, and any Medicare Part C provider.
>
> a. Jeffery Babbitt
>    i. November 19, 2017 to Present
> b. Kelly Beecher
>    i. November 1, 2017 to September 19, 2019
> c. Derrick Elmer
>    i. March 2018 to Present
> d. Shawn Hoopaugh

---

[4] *See, e.g.*, Investigative Rep't at 130, <u>ECF No. 63-4</u> (depicting sworn interview in which "Babbitt advised that he was unable to sign up for an ACLS class before his provider credential expired." Babbitt explained he met with Bonoyer and "*I magically had a card*."); *id.* at 42 (Elmer); *id.* at 46–48 (Hoopaugh); *id.* at 262 ("Kelly Beecher was not properly credentialed to practice as a paramedic from 2/1/2018 to 11/13/2019."). FDLE investigations have been viewed as factual findings under Federal Rule of Evidence 803(8)(A)(iii) and as reliable. *See DeWit v. UPS Ground Freight, Inc.*, No. 1:16CV36-MW/CAS, 2017 WL 11672840, at *3 (N.D. Fla. June 29, 2017) ("The Florida Department of Law Enforcement's I-75 investigative re-port is … a public record that sets out 'factual findings from a legally authorized investigation.'" (quoting Fed. R. Evid. 803(8)(A)(iii)).

     i. May 29, 2010 to Present
   e. Thomas Jackson
     i. May 29, 2010 to March 7, 2019

Def.'s 4th Supp. Resp. RFP No. IV-6, Ex. K.

  The County responded to Request IV-6 similarly to how it responded to

Request III-1:

> RESPONSE: Defendant objects to this Request based on the fact that the request as currently written – seeks information that is overbroad, vague, unduly burdensome, irrelevant, and not proportional to the needs of the case. See Federal Rule 26(b). First, Plaintiff is requesting "all documents which are, refer to, or reflect work schedules; provider and/or instructor training; duty rosters; patient run reports; Computer Aided Dispatch; reports related to disaster relief, mutual relief, and special events; daily shift summaries; daily activity logs; daily supervisor reports; leave slips; and claims made to government payors, submitted CMS Series 1500 Forms, and Escambia County Board of County Commissioners Patient Care Records for services provided in whole or in part by each individual" outlined above.

> Critically, the word "document" as defined by Plaintiff in their definitions section of the Fourth Request for Production includes over 108 different meanings.1 In addition, the request is clearly unduly burdensome as it requests not only the documents, but any document that "refers to or reflects" the requested information, which is clearly irrelevant, inherently overly broad, and not proportional to the needs of the case. See Evans v. W. Atlee Burpee Co., No. 15-61819-CV, 2016 WL 3382347 (S.D. Fla. June 6, 2016); O'Boyle v. Sweetapple, No. 14-81250-CIV, 2016 WL 492655 (S.D. Fla. Feb. 8, 2016) (Information sought in discovery was disproportionate and irrelevant and would cause the parties to run down a rabbit hole chasing irrelevant information on collateral matters, resulting in the needless and wasteful expenditure of time and money by both parties). Therefore, the documents which may be responsive to this request that "relate to or refer to" any of the requested information is unduly burdensome as the Defendant would have to search through current and former employee email inboxes and computer records and data, for information that

would not assist in resolving the issues in this case and which the burden and expense of the proposed discovery outweighs its likely benefit. For example, documents that "refer or relate to" the requested documents would encompass thousands of irrelevant documents that have no bearing on the claims or defenses in this case. Therefore, Defendant requests Plaintiff narrows this request.

In addition, Plaintiff failed to define what it means by "reports related to disaster relief, mutual relief, and special events." Defendant needs additional information in order to determine how to search for the reports requested. For instance, Defendant is not sure what type of report Plaintiff is requesting regarding disaster and mutual relief; i.e., whether Plaintiff is seeking reports related to hurricanes and/or other natural disasters, Covid-19, emergency preparedness, timesheets of individuals handling the different types of relief, invoices, or financial information. In addition, it is also unclear what reports Plaintiff is seeking concerning "special events" or how to search for them as to each individual identified. As such, this request is overly broad and vague. Defendant needs additional information as to what information Plaintiff is seeking in order to respond to this request.

However, with respect to each paramedic's patient trip data and billing data for government payors for the period outlined above, please see responsive Zoll reports at bates numbers 083223-084887.

Finally, Defendant maintains the above objections for the remaining issues objected to in Request number 1. However, with respect to the actual documents requested concerning the work schedules; provider and/or instructor training; duty rosters; daily shift summaries; daily activity logs; daily supervisor reports; and leave slips, please see bates numbers 49484-589032 and 63028-63947.

Finally, with respect to the documents requested concerning the work schedules; provider and/or instructor training; duty rosters; daily shift summaries; daily activity logs; daily supervisor reports; and leave slips, please see bates numbers 049453-049483, 049484-058903, 63028-63947, 79967-80430.

*Id.*

Because Requests III-1 and IV-6 seek the same data but for different sets of employees, the parties' discovery and discussions surrounding these requests largely have been consolidated and interchangeable since last fall. Indeed, the County noted these five employees when it argued burden to this Court relating to Request III-1. *See* Def.'s Mot. to Compel Resp. 4 n.3, ECF No. 51. However, because Dr. Edler had not yet sought to compel these documents, the Court's Order was appropriately silent as to IV-6.

### 3. *Failed Negotiations Relating to Request Nos. III-1 and IV-6*

During the months (not two weeks as ordered) following the Court's September Order, the County identified and produced the following categories of documents it deemed responsive to the above requests:

- Emails summarizing shifts;

- Vehicle reports;[5]

- Junk files resulting from processing emails;

- Lists of employees asked to work shifts;

- Certification, training, and personnel documents;[6]

---

[5] These documents were not responsive; nor were the many shift summaries that did not identify crew members.

[6] These documents are responsive to Request Numbers I-1 to I-5 and the County already agreed to produce them in connection with those requests.

- Work hour reports for 4 of the 17 employees;[7] and

- "Zoll Summary Reports," or "Zoll Reports" which Defendant represented reflected claims data.[8]

Bailey Decl. ¶ 2. The productions did not include actual claims data, any ESO reports, any dispatch records, or patient records as requested. *Id.*

In a series of phone conferences between counsel, Dr. Edler immediately and repeatedly raised concerns about the completeness and reliability of the County's production including the Zoll Reports. On November 30, 2022, Dr. Edler sent the County a letter in part detailing the issues with the III-1 & IV-6 productions, particularly Dr. Edler's concerns over the accuracy, completeness, and reliability of the Zoll Reports.[9] Rel.'s 11/30/22 Ltr. 9–13, Ex. A. For example, the search terms used in the filter logic appear to be underinclusive, excluding government payors

_____

[7] Only 1 of the 4 work-hours reports were responsive to Request Number III-1. The other three were responsive to Request Number IV-6. Bailey Decl. ¶ 5. The County has not provided any further work hours reports for the remaining employees in the many months since. *Id.*

[8] These reports are named after the contractor the County used to store claims data during some of the relevant time period. The Zoll company also supposedly assisted the County in designing the reports and underlying filters the County used to produce Zoll Reports. Based upon Dr. Edler's analysis of these Reports, she can not conclude that they satisfy this request. The County has known about this concern since it produced the first Zoll Report. Dr. Edler has consistently demanded at least a sample of the underlying data to check the Zoll Reports against, the relevant data dictionaries, or some other appropriate quality control measures. To date, the County has not provided any. Newman Decl. ¶ 2.

[9] These concerns have been the topic of multiple calls. Newman Decl. ¶ 3.

that do not include identified keywords (e.g., Medicare) in their names/descriptions within the claims system. *See, e.g.*, *id.* at 11. The reports also appear to be unreliable in that their report of secondary payor information appears impossibly high. *Id.*

A closer look at the Zoll Reports even after additional productions similarly reveals deficiencies. For example, the data provided contains no responsive claims for Richard McLeod. Bailey Decl. ¶ 6. The County only produced one report relevant to Stephen White during a smaller five-month period, and that report does not identify any government claims. *Id.*

Crucially, the Zoll Reports exclude claims data from the time when the County used the ESO system to store claims data instead of the Zoll database. *See* ECF No. 98 at 2. The County disclosed in September 2022 that the ESO data uploaded into Zoll was corrupt and unusable.[10] *See* 09/27/22 Email, Ex. B. It must be emphasized that the ESO data was plainly responsive to III-1 which was propounded on November 22, 2021, ten months earlier.

The County represented that it would need more time to collect and produce ESO data in response to Dr. Edler's November 30, 2022 letter. Newman Decl. ¶ 5.

---

[10] It appears the County did not reach out to ESO about alternative ways to obtain the data until after the Court's Order. 10/04/22 Email, Ex. C. And, more than a year and a half later, and eight months after the Court ordered the County to produce the materials, the County had no plan for producing usable ESO claims data. *See* Joint Mot. to Extend Sched. Ord., ECF No. 104 at 3 n.5. It also still cannot provide an informed estimate for how long this will take. Bailey Decl. ¶ 10.

Not until May 8, 2023, did the County represent it would imminently produce some Zoll Reports that include ESO summary data to reflect the total number of calls for employees and identifying payors. Bailey Decl. ¶ 12. To date, however, Dr. Edler has not received any summaries, and in fact, she was notified for the first time when compiling the May 31, 2023 Joint Discovery Report, ECF No. 102, that the County still had not determined how to produce ESO data. Bailey Decl. ¶ 9. The County recently represented that it would likely take 30-45 days for the County to produce ESO *summaries*. Joint Mot. 4, ECF No. 104. And more recently, the County claimed that it still could not estimate the time it would take to produce more granular ESO data. Bailey Decl. ¶ 10.

In summary, data responsive to Requests III-1 and IV-6 remains outstanding, particularly ESO claims data, CAD reports, complete work-hours reports, and patient care records.

####     4.    *Failed Efforts to Stipulate in Lieu of Productions Pursuant to the September 30, 2022 Court Order*

Following the Court's September 30, 2022 Order, the parties engaged in ongoing negotiations to stipulate to obviate the need for some or all of the ordered III-1 productions.[11] Dr. Edler analyzed the existing Zoll Report productions and circulated a proposal on December 12, 2022, wherein the parties would agree to 1) an average claim amount for government claims; 2) the percentage of calls that relate to government payors; and 3) total number of calls per identified employee. Rel.'s Draft Stip., Ex. D. The parties conferred and emailed about this proposal over the next two months, and the County represented that it needed to schedule a "shade" meeting with the commissioners to discuss the proposal. But the County did not hold a "shade" meeting until April 20, 2023, and it did not make a counter proposal to Dr. Edler's stipulation until May 1, 2023. Newman Decl. ¶ 7; Bailey Decl. ¶ 11.

The County's proposal agreed to only two of Dr. Edler's three provisions, excluding the total number of calls per relevant employee. *See* Def.'s Draft Stip., Ex. E. Ironically, Dr. Edler drafted this provision using the County's own representations

---

[11] Dr. Edler first proposed a stipulation in lieu of production on or about April 1, 2022, and the parties reported these conversations to the Court on April 4, 2022. Jt. Mot. to Amend at 4 n.4, ECF No. 44 ("The parties are working towards a stipulation which would obviate the production of these materials which the parties estimate to be many tens or hundreds of thousands of documents."). The County referenced a theoretical stipulation as part of its defense to Dr. Edler's motion to compel. ECF No. 51 at 3, 8, 14.

about call quantity as found in its discovery responses as well as its opposition to Dr. Edler's motion to compel. *See supra* Background Part II.A)1; Def.'s Mot. to Compel Resp. 4, ECF No. 51; Def.'s RFP Resp. No. III-1, ECF No. 49-1 (depicting 24,180 calls for eight employees). Without agreeing to a number of calls, the County's proposed stipulation would **not** obviate the production of any documents. Indeed, proposing to agree to the percentage of calls paid by the government but refusing to agree to the total number of calls makes the County's proposed alternative stipulation useless.

On May 11, 2023, Dr. Edler informed the County that it could not agree to its modifications because Dr. Edler needed the call count to calculate damages. Rel.'s 05/11/23 Email, Ex. F. Dr. Edler represented that she no longer believed a stipulation was possible and called instead for the production of the remainder of the court-ordered documents. *Id.* In so doing, Dr. Edler narrowed the particular documents she sought with Request Nos. III-1 and IV-6 to only 1) the work-hour reports for the remaining employees; 2) dispatch records; and 3) a Rule 30(b)(6) deposition so that Dr. Edler could determine the sufficiency and/or the limitations of the Zoll Reports reflection of actual claims data.[12] *Id.* Dr. Edler also asked for a time frame for the

---

[12] Throughout all of these negotiations, Dr. Edler has always reserved her right to demand production of the actual, court-ordered productions of claims data if the Zoll Reports prove to ultimately be unreliable. Newman Decl. ¶ 9.

County's production of summary reports for ESO data (as the County had represented in an earlier phone call was forthcoming) as she understood at that point the production was imminent, and Dr. Edler requested a follow-up on her requests that productions be made in a more useable format. *Id.*

The County has not proposed a plan to satisfy the Court's September 30, 2022 Order at least with respect to the ESO data. Bailey Decl. ¶ 9. The County has also represented that it would not be in a position to respond to Dr. Edler's compromise until at least June 9, 2023, and the County reiterated in conferrals many of the same objection arguments it advanced in opposition to Dr. Edler's first motion to compel—which the County in part waived and which the Court already rejected last year. *Id.* ¶ 15.

The parties conferred again on June 6, 2023, this time with the County's eDiscovery consultant, who outlined a plan for extracting ESO data, but he was unable to estimate the time the project would take. *Id.* ¶ 16. The parties had a conference scheduled to discuss this and other issues on June 13, 2023, but the County cancelled due to a scheduling conflict. *Id.* ¶ 17. While the County informed Dr. Edler that its meeting with its vendor went well, it still has not updated Dr. Edler as to its position on her narrowed III-1 and IV-6 demand since its self-imposed June 9, 2023. *Id.* ¶ 18. On June 20th, Dr. Edler requested a response in writing. *Id.* ¶ 18.

Given the parties have exhausted stipulation negotiations; that the County did not produce responsive documents within two weeks of the Court's September 30, 2022 Order; and given that it is still unclear what if anything the County is preparing to produce and when, Dr. Edler seeks sanctions as to the County's violation of the Court Order relating to Request III-1 and an order compelling production of Request IV-9 data.

**B)     Request Nos. V-1 through V-3**

Dr. Edler served a fifth set of requests for the production of documents on December 22, 2023.[13] Relevant to this Motion are three requests:

[**REQUEST NO. V-1**]

All documents which are patient care records.

a. We will accept a transfer of the associated databases in lieu of the production of individual documents.

(Rel.'s RFP No. V-1, Ex. G.)

[**REQUEST NO. V-2**]

All Computer Aided Dispatch ("CAD") records.

a. We will accept a transfer of the associated databases in lieu of the production of individual documents.

(*Id.* V-2.)

---

[13] Dr. Edler takes issue with the completeness of the County's responses and productions relating to other requests in Set V, but she does not believe those issues are yet ripe for Court intervention and therefore they are not addressed in this motion.

[**REQUEST NO. V-3**]

All billing records related to or associated with the above requested patient care or CAD records.

a. We will accept a transfer of the associated databases in lieu of the production of individual documents.

*Id.* V-3.

Note the overlapping categories of information in Request V-1 through V-3 as compared to Requests III-1 and IV-6, with the discernable difference between the sets being that the new Set V seeks data beyond the 17 identified employees. Dr. Edler needs this additional data for two reasons—because (1) the County's more-limited productions to date relating to Request III-1 and IV-6 have been insufficient, and Dr. Edler is concerned that the process of attempting to narrow productions to the 17-identified employees may itself be attributing to the errors discovered in the Zoll Reports, and (2) Dr. Edler's Count II, addressing miscoding, requires a broader analysis of the claims data to determine whether or not the County submitted claims for the correct service/level of service.[14]

Dr. Edler agreed to delay the County's Set V responses while the County was responding to the Second Amended Complaint. The County subsequently requested additional extensions, ECF Nos. 81, 85, which the Court granted, ordering the

---

[14] Count II alleges a County-wide miscoding false-claim scheme and not the more limited set of provider-by-provider false claims alleged in Count I.

County "to produce the requested discovery" within 30 days,[15] ECF No. 88. On April

12, 2023, the County served Dr. Edler with written responses, including:

RESPONSE [TO REQUEST V-1]:

Objection. this request seeks "[a]ll documents which are patient care records" in Defendant's possession over a period of thirteen (13) years involving any patient care records for the over three hundred thousand (300,000) citizens of Escambia County. Significantly, the request is not proportional to the needs of the case as this request seeks the disclosure of hundreds of thousands of documents while stating with no specificity the relevance of these records to the causes of action in this matter and the need for the records. See Evans v. W. Atlee Burpee Co., No. 15-61819-CV, 2016 WL 3382347 (S.D. Fla. June 6, 2016); O'Boyle v. Sweetapple, No. 14-81250-CIV, 2016 WL 492655 (S.D. Fla. Feb. 8, 2016) (Information sought in discovery was disproportionate and irrelevant and would cause the parties to run down a rabbit hole chasing irrelevant information on collateral matters, resulting in the needless and wasteful expenditure of time and money by both parties). As such, Defendant objects to this request as unduly burdensome, overly broad and not sufficiently limited in time or scope to the issues in this lawsuit.

Moreover, even if the patient care records are relevant in proving a cause of action under the Second Amended Complaint, there must be some limitation "In deciding whether to restrict discovery under Federal Rule of Civil Procedure 26(b)(2)(C), the Court 'should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court.'" Caballero v. Bodega Latina Corp.,

---

[15] Dr. Edler emailed the County asking for a conference relating to Requests V-1 to V-3 in advance of production so that the parties could get on the same page about the data produced and format used prior to the County spending time and resources. Rel.'s 3/16/23 Email, Ex. H. The County indicated a willingness to talk in immediately responsive emails, but similar to with the Shade-meeting discussion, evaded attempts to set up a call and ultimately served responses refusing to produce responsive documents without conferring. Bailey Decl. ¶ 21.

No. 2:17-cv-00236-JAD-VCF, 2017 WL 3174931, at *3 (D. Nev. July 25, 2017) (internal citations and quotations omitted). "District courts have broad discretion when determining relevance for discovery purposes." Allstate Ins. Co. v. Shah, 215CV01786APGDJA, 2022 WL 3359639, at *2 (D. Nev. Aug. 15, 2022).

In addition, this request requires the disclosure of hundreds of thousands of documents, creating an extensive and burdensome task of reviewing such a voluminous number of documents in a limited amount of time. Even though the documents requested may be able to be produced pursuant to the Florida Public Records Act, Chapter 119, (with an expensive price tag) the request is unduly burdensome and overly broad to require Defendant to sift through all of these files without providing any specific barriers, limitations, time periods, which these thousands of files have to the stated claims. As such, this request is essentially a fishing expedition which is prohibited under the Federal Rules of Civil Procedure. See Bielawski v. Davis Roberts Boeller & Rife, P.A., No. 2:18-cv-00758-JES-MRM, 2019 WL 12383127 (M.D. Fla. 2019); See also Alig-Mielcarek v. Jackson, 286 F.R.D. 521, 525 (N.D. Ga. 2012) (while broad, discovery is not an unlimited license for a fishing expedition).

Furthermore, although there is a HIPAA order in this case, this request opens the door to a needless amount of protected information being disclosed in this action. For patient records spanning more than thirteen years and involving potentially hundreds of thousands of records and/or patients, this request must be narrowed,

Moreover, Defendant cannot transfer the entire contents of the associated database, as suggested by Plaintiff, because it contains sensitive information and HIPAA protected information that cannot be put into someone else's hands without any limitations or barriers. This could subject the county to liability.

For these reasons, Defendant must review all potentially responsive records prior to disclosure to ensure its compliance with the applicable legal restrictions on disclosure of patient identifying information. Finally, again, this is a fishing expedition and Plaintiff is asking for everything but the kitchen sink.

Def.'s RFP Resp. No. V-1, Ex. G; *accord* Def.'s RFP Resp. No. V-2 & V-3 (making similar objections), Ex. G.[16] The County's productions did not include documents responsive to V-1 through V-3, Bailey Decl. ¶ 22, and therefore it did not comply with the Court's order "to produce the requested discovery."

Dr. Edler made the County aware of this fact. Rel.'s 04/14/23 Email, Ex. I. The parties discussed these requests in phone conferences on May 8th and 23rd. Bailey Decl. ¶ 24. The County disputes Dr. Edler's reading of the Court's Order requiring it to "produce" discovery, stating its written responses were sufficient; it stands by its objections; and it additionally asserts that productions for these requests would be premature while its second motion to dismiss is pending. *Id.* Notably, the County has not requested a stay of discovery relating to Count II from the Court.

## **LEGAL STANDARD**

Rule 34 permits a party to "serve on any other party a request within the scope of Rule 26(b)[] to produce . . . items in the responding party's possession, custody, or control . . . ." Fed. R. Civ. 34(a)(1). "The obligation to ensure that all responsive documents are produced falls not only on the parties, but also on counsel." *Meraki Solar, LLC v. Rosenbalm*, No. 3:21-CV-405-MCR-HTC, 2021 WL 5114869, at *2

---

[16] Dr. Edler takes issue with the completeness of the County's responses and productions relating to other requests in Set V, but she does not believe those issues are yet ripe for Court intervention and therefore they are not addressed in this motion.

(N.D. Fla. Nov. 3, 2021) (citing *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004)); *see also* Fed. R. Civ. P. 26(g).

When discovery productions are deficient, a "party may move for an order compelling disclosure or discovery . . . ." Fed. R. Civ. P. 37(a)(1) & (3)(iv). When a court issues such an order, and the responding party "fails to obey an order to provide or permit discovery, including an order under Rule . . . 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2). The Court has broad discretion to control discovery under Rule 37(b) and under its inherent powers. *Fairmarkit, Inc. v. Whaley*, No. 3:22CV5067-TKW-HTC, 2022 WL 18717547, at *1 (N.D. Fla. Nov. 30, 2022), *report and recommendation adopted*, No. 3:22-CV-5067-TKW-HTC, 2022 WL 19407538 (N.D. Fla. Dec. 19, 2022). The sanctions available vary greatly, ranging from an award of fees to striking pleadings and prohibiting legal arguments, and default. *See* Fed. R. Civ. P. 37(b)(2) and N.D. Fla. Loc. R. 41.1 (authorizing sanctions, up to and including dismissal, for failure to comply with a rule or court order).

Narrowly tailored sanctions (such as those requested below) are appropriate when they are consistent with and address the pertinent discovery information withheld. *See United States v. CMC II, LLC*, No. 8:11-CV-1303-T-23TBM, 2015 WL 12915543, at *8 (M.D. Fla. May 19, 2015) (granting relator's motion for sanctions because "[t]hat sanction is consistent with and addresses the pertinent

discovery information withheld"), *report and recommendation adopted sub nom. United States ex rel. Ruckh v. CMC, LLC*, No. 8:11-CV-1303-T-23TBM, 2015 WL 12915544 (M.D. Fla. Aug. 12, 2015); *see also Card Tech. Corp. v. DataCard Inc*., 249 F.R.D. 567, 571–72 (D. Minn. 2008) (concluding that "the judicial admission of certain facts as established in response to a Rule 37(b)(2) motion is not necessarily a severe sanction" . . . and recognizing that the willfulness or good faith of a party does not affect the fact that the party failed to comply with a court order), *cited by Ruckh*, 2015 WL 12915543, at *8.

## **LEGAL ARGUMENT**

### I.    **THE COURT SHOULD SANCTION THE COUNTY RELATING TO REQUEST NO. III-1.**

The Court has already ordered productions relating to Request III-1 within 14 days of September 30, 2022. It has been more than 14 days since the Order, and it has been more than 14 days since the parties' efforts to stipulate in lieu of production failed. As such, Dr. Edler now seeks sanctions relating to the County's failure to comply. Dr. Edler makes four requests.

First, Dr. Edler seeks a finding of the following facts:

- At least sixty-six percent (66%) of Escambia County's ambulance calls are billed to and paid by the United States;

- The United States paid the County at least three hundred fifty dollars ($350) for each ambulance claim; and

- The following employees responded to at least the following number of calls during these specific periods:

  3,997- Matthew Selover from April 1, 2018 to last day of employment;

  9,232 – Adam Szwec from February 1, 2018 to November 20, 2019

  1,045 – Cheryl Taylor from July 1, 2018 to November 30, 2018;

  5,000 – Walter Kerman from February 1, 2018 to January 31, 2020;

  133 – Rebecca Brownfield from April 1, 2018 to March 1, 2020;

  254 – Brenda "Karen" Wood from February 1, 2018 to June 1, 2019;

  3,299 – Richard Jacob McLeod from January 1, 2016 to last day of his employment; and

  1,220 – Kaitlyn Brown from January 1, 2017 to July 1, 2017.

Collectively, these total 24,180 calls.

This sanction is reasonable and appropriate because the County already agreed to stipulate to the percentage and average payment provisions.[17] *See* Def.'s Draft Stip., Ex. E. The third provision, the number of responses by these employees during these periods, is based on the County's representations, including to this

---

[17] Dr. Edler added "at least" to each of these items to account for the possibility that she is able to prove with existing productions numbers greater than these baseline assumptions.

Court, that the total for these employees exceeded 24,180 calls. ECF Nos. 49-1 at 5 and 51 at 4.

Although Dr. Edler believes the actual amounts are even higher than 66%/$350, she has narrowly tailored the sanction. The sanction is appropriate because it is consistent with and addresses the pertinent discovery information withheld. *See Ruckh*, 2015 WL 12915543, at *8.

Second, Dr. Edler requests a ruling prohibiting the County from challenging as unreasonable or unreliable any statistical extrapolation, interpolation, or proration that Dr. Edler's expert(s) must employ to address missing ESO claims data and incomplete claims data found on the Zoll Reports. This narrowly tailored sanction is appropriate because it addresses pertinent discovery information withheld and/or lost by the County.

Third, Dr. Edler requests discovery-on-discovery in the form of productions of ESO and Zoll data dictionaries, metadata repositories, and database schema, and a Rule 30(b)(6) deposition[18] on the following topic:

> "Trip Summaries", also referred to as "Zoll Reports," including the process for creating Zoll Reports; the structure of the database(s) that house(s) the claims data found on the Zoll Reports; their report and export capabilities; the logic, script, and/or code used to query the database(s) to create the Zoll Reports; the structure and format of the

---

[18] Dr. Edler ask that this technology deposition not prohibit her from taking a substantive Rule 30(b)(6) deposition of the County at the appropriate time relating to more substantive topics.

> Zoll Reports; the values and attributes reflected on the Zoll Reports; the quality and characteristics of the ESO data; and the reports generated from the ESO data.

It is appropriate because it will assist Dr. Edler in determining the scope of the missing data, analyze productions provided (if any) in response to Request IV-6, and negotiate productions responsive to Requests V-1 to V-3. This may also help reduce future motion practice.

Fourth and finally, Dr. Edler requests the Court again order the County to produce documents responsive to Request III-1 within two weeks, specifically ESO claims data, any outstanding Zoll claims data, CAD reports, complete work-hours reports, and patient care records relating to the following employees:

> a. Stephen White, May 1, 2018 to last day of employment
> b. Katherine Kenney, February 1, 2018 to last day of employment
> c. Lawrence Salter, November 1, 2017 to May 30, 2019
> d. Matthew Selover, April 1, 2018 to last day of employment
> e. Adam Szwec, February 1, 2018 to November 20, 2019
> f. Cheryl Taylor, July 1, 2018 to November 30, 2018
> g. Walter Kerman, February 1, 2018 to January 31, 2020
> h. Rebecca Brownfield, April 1, 2018 to March 1, 2020
> i. Kelly Beecher, February 1, 2018 to December 1, 2019
> j. Brenda "Karen" Wood, February 1, 2018 to June 1, 2019
> k. Richard Jacob McLeod, January 1, 2016 to last day of employment
> l. Kaitlyn Brown, January 1, 2017 to July 1, 2017

For reasons Dr. Edler previously explained, she is not asking for fees or costs *at this time*. ECF No 63 at 30-31 (Motion to Compel). To the extent the Court wishes to order fees or costs, Dr. Edler asks that the Court continue the briefing on the

appropriate amount until judgment. Rather, the Court should issue sanctions in the form of the narrow and appropriate relief Dr. Edler requests above.

## II. THE COURT SHOULD COMPEL THE COUNTY FOR ITS FAILURES TO PRODUCE PATIENT RECORDS, CLAIMS DATA, AND DISPATCH DATA RELATING TO REQUESTS IV-6, AND V-1 THROUGH V-3.

Dr. Edler propounded set IV document requests in May of 2022, and yet Request IV-6 remains unsatisfied. The Court should overrule the County's objections relating to Request IV-6 because they are the exact same objections that the Court considered and rejected in September as advanced against Request III-1—a request for the exact same categories of data for a different employee set. Order at 2–4, ECF No. 61. The Court should again hold that the data sought is relevant and proportionate and must be produced, particularly ESO claims data, any outstanding Zoll claims data, CAD reports, complete work-hours reports, and patient care records for:

     a. Jeffery Babbitt, November 19, 2017 to Present
     b. Kelly Beecher, November 1, 2017 to September 19, 2019
     c. Derrick Elmer, March 2018 to Present
     d. Shawn Hoopaugh, May 29, 2010 to Present
     e. Thomas Jackson, May 29, 2010 to March 7, 2019

Like IV-6, Requests V-1 to V-3 overlap with Request III-1 in that both sets seek claims data, dispatch records, and patient records. Therefore, for the same reasons the Court held Request III-1 to be relevant and proportionate to the case and for the County's objections to fail, the Court should similarly hold for Requests V-

1 to V-3. The data requested goes to the heart of Count II. Claims data will demonstrate what government payors paid and for which services and/or levels of service. But claims data do not tell the entire story. Dispatch records reflect who responded to which calls, the types of calls, whether or not the lights and sirens were used, and how the County internally coded the call (e.g., "emergency"). Further, patient records can be used to determine which service or level of service was medically necessary and provide a service description such as BLS-E (basic life support emergency). As Escambia has repeatedly asserted, this data is also necessary to correlate emergency responses across its several relevant databases: billing, patient records, and dispatch. *See, e.g.*, Escambia's Opposition to Motion to Compel, ECF No. 51 at 5-6 (detailing the interrelation of "run number," "incident number," and Escambia's various databases). This information, put together, can be used to establish Dr. Edler's claims—both Count I and Count II.

With respect to set V, the County argues the requests are premature in so much as the data relates to Count II and its motion to dismiss Count II is pending. But the County did not request a stay in either of its two motions to extend.[19] *See* ECF Nos. 82, 85. A discovery stay is not automatic with a motion to dismiss, and this Court

_____

[19] Had the County moved, it would have born the burden of demonstrating good cause. *See McMillan v. Dep't of Corr.*, No. 5:13-CV-292-WS-GRJ, 2013 WL 11762140, at *2 (N.D. Fla. Oct. 21, 2013) ("The moving party bears the burden of showing good cause.").

did not affirmatively issue one. *See McMillan*, 2013 WL 11762140, at *2 (stating stays are disfavored, particularly when a motion would not dispose of a case entirely, because stays "typically delay resolution of a case and extend the life of a case beyond an acceptable time period."). Rather, it did the opposite. On March 13, 2023, the Court ordered:

> [D]efendant shall have 30 days from the date of this order to produce the requested discovery. The parties are strongly advised that any further extensions are unlikely to be granted.

Order, ECF No. 88.[20]

Even if there were no order "to produce discovery," practical considerations support moving forward with these productions. Given the difficulties and delays that the County represents it faced to date with producing Zoll Reports, it would be prudent to begin production now. At a minimum, the parties should be conferring regularly with their respective technologists in order to explore an agreeable data extraction plan. Dr. Edler attempted to begin these discussions, *supra* n.15, but her efforts were ignored.

---

[20] Given the wording of the Court's order, the County's failure to produce this data could be analyzed under Rule 37(b) instead of Rule 37(a) as the County willfully disregarded the order instead of requesting a stay or requesting a third extension. *See Rodriguez v. Geico General Ins. Co*., No. 6:19-cv-1862-Orl-40GJK, 2021 WL 1053156, at *2 (M.D. Fla. Feb. 4, 2021) ("[I]t is better to ask forgiveness than to seek permission. The Court, however, is not inclined to forgive attorneys who flaunt the Court's Orders.").

For the above reasons, the Court should grant Dr. Edler's motion to compel as to Requests IV-6 and V-1 to V-3.

## CONCLUSION

Plaintiff-Relator Dr. Edler respectfully requests the grant her Motion to Compel and for Sanctions.

Respectfully submitted on June 21, 2023, by:

*s/Jonathan Kroner*
Jonathan Kroner
FBN 328677
Jonathan Kroner Law Office
6001 N Ocean Dr., Ste. 806
Hollywood, FL 33019-4617
305.310.6046
jk@FloridaFalseClaim.com

Law Offices of Darth M. Newman LLC
Darth M. Newman
PA Bar No. 209448
1140 Thorn Run Rd., #601
Coraopolis, PA 15108
412.436.3443
darth@dnewmanlaw.com
(admitted *pro hac vice*)

Rebekah Bailey*
MN Bar No. 0389599
Mathew H. Morgan*
MN Bar No. 0304657
Gerald C. Robinson*
MN Bar No. 0212787
Grace Chanin*
MN Bar No. 0399969
(admitted *pro hac vice*)
Nichols Kaster, PLLP
80 S. Eighth Street
IDS Center, Suite 4700
Minneapolis, MN 55402
Tel: 612.256.3200
Fax: 612.338.4878
bailey@nka.com
morgan@nka.com
grobinson@nka.com
gchanin@nka.com

(admitted *pro hac vice*)

**N.D. Fla. Loc. R. 7.1(F) Word Count Certification**

I certify that this document complies N.D. Fla. Loc. R. 7.1(F) because it contains 7,299 words, excluding parts of the document exempted by the Rule.

*s/Jonathan Kroner*