IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

United States of America,
*ex rel.* Rayme M. Edler, M.D.,

     Plaintiff-Relator,          Case No. 3:20-CV-05503 MCR-HTC

v.

Escambia County,

     Defendant.

---

## PLAINTIFF-RELATOR'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

---

Defendant Escambia County's Motion rests on a faulty premise, inapplicable law, and facts expressly controverted by a Commissioner's public statements. The Federal Rules of Civil Procedure do not prevent Plaintiff-Relator Dr. Edler from reviewing non-privileged information she obtained from a third party outside formal discovery. The County did not produce the spreadsheet in question under Rule 34. Dr. Edler did not subpoena Mr. Owens under Rule 45. He simply sent the spreadsheet to her Counsel.

The question before the Court now is not whether Dr. Edler is entitled to obtain a document she already has. The question is whether a non-producing party has the "carte blanche, 'willy nilly'" right to shield Dr. Edler from non-privileged,

unprotected content in that document. It does not. The Court should therefore enter an order, denying the County's Motion and adopting the review procedure set forth by Relator below.

## BACKGROUND

I.     **The County Represented Responsive Text Messages Do Not Exist on Employees' Personal Cell Phones.**

Dr. Edler served many discovery requests on the County that seek relevant communications on identified topics, including text messages. Declaration of Rebekah L. Bailey ("Bailey Decl.") ¶ 3. While negotiating email search terms related to requests II-23 and III-6, Dr. Edler made clear her position that, should the County seek to use search terms to identify responsive *text messages*, those terms should be broader than the keywords for email to account for the ways in which people communication differently in text messages. *Id.* ¶ 5.

The County produced some text messages from County-owned phones for the first time this week. *Id.* ¶ 6. The County, however, has long maintained that responsive text messages relating to public business do not exist on County employees' *personal* cell phones. *Id.* ¶ 4. It is unclear whether the County reviewed the spreadsheet in question or otherwise undertook a reasonable investigation before making that representation.

The County's unsupported explanation of how it came to possess this file is flat-out contradicted by County Commissioner Jeff Bergosh himself. The County wrote:

> The contents of Commissioner Bergosh's personal cell phone were, in an abundance of caution prior to an international trip, backed up to Escambia County's computer system for purposes of preserving the data should they, possess data related to County business.

Def.'s Br. 2, ECF No. 112. But Commissioner Bergosh's contemporaneous statements from the dais are different. He thanked the County's IT Department for recovering public records from his phone:

> We had a significant problem with my iPhone. It was operator error, and my fault completely. But *there were public records on my phone that had to be preserved.*[1]

Escambia County Board of Commissioners Meeting at 16:25-17:00 (Feb. 10, 2022) (emphasis added).[2]

He thanked the entire IT staff, mentioned by name two individuals (Bart and James) who helped recover this ESI from his phone, and then emphasized the public

---

[1] The County's correspondence to Dr. Edler suggests that in the 17 months since Commissioner Bergosh put it on notice that he keeps public records on his personal phone, that it has still not reviewed this document to capture public records—as required by Florida's Sunshine laws. *See also* Declaration of Jonathan Owens ("Owens Decl.") ¶ 46 ("I also know that Commissioner Bergosh frequently used his personal cell phone for County business to the near exclusion of his County provided phone.").

[2] Available at https://escambiacofl.portal.civicclerk.com/event/492/media.

records on his personal phone when he repeated staff "helped me with a solution that helped preserve the public records." Dr. Edler does not know, and the County is not disclosing, how the file was thereafter preserved, protected, or distributed internally.

What is clear is that the County possessed the file containing Commissioner Bergosh's text messages for some time.

## II.    A Former County Employee Provided Dr. Edler's Counsel with an Electronic File.

On March 15, 2023, Jonathan Owens, a non-party to this litigation and former County employee, emailed Dr. Edler's Counsel a single Excel file he represented contained text messages from Commissioner Bergosh's personal cell phone. *See* Declaration of Darth Newman ("Newman Decl.") ¶ 2. Counsel did not request this file from Mr. Owens, and they did not know in advance that he would be sending it. *Id*.

The County maintains Mr. Owens illegally obtained the file, *see, e.g.*, Def.'s Br. 2, ECF No. 112, yet it offers no evidence to support this accusation. Mr. Owens in fact represented to Counsel that he came by the file innocently. Newman Decl. ¶ 3. Counsel cannot independently verify either statement. It would be imprudent for Counsel to discuss this matter with Mr. Owens further given the County's representation that it has mounted a criminal investigation against him.

To be clear, Dr. Edler's attorneys have sequestered the file and proceeded carefully. Shortly after coming into possession, they notified defense counsel. Dr.

Edler herself has never had access to the file in any way. *Id.* ¶ 4. Only one of her Counsel received the file, and he did not forward it to the remaining firms.[3] *Id.* ¶ 4. Dr. Edler's Counsel has not substantively reviewed the file. *Id.* ¶ 5. Her Counsel proceeded out of an abundance of caution so not to inadvertently view attorney client privileged information.

### III. Dr. Edler Has Reason to Believe the Spreadsheet Contains Relevant Communications.

Dr. Edler has reason to believe from her Counsel's conversations with Mr. Owens that the spreadsheet contains non-privileged, relevant content. Mr. Owens told Counsel that he saw Dr. Edler referenced in the spreadsheet. Newman Decl. ¶ 6. Dr. Edler further believes the spreadsheet contains public content because of Commissioner Bergosh's representations cited above at a public meeting that the backup was made to preserve public records. *Supra* Facts Pt. I.

Commissioner Bergosh's other public statements confirm that he is likely to have had work-related communications on his personal cell phone, including discussions related to Dr. Edler and her allegations.

---

[3] When he sent the file to the County, he password protected it and did not share the password with his co-counsel. Newman Decl. ¶ 5.

**A)    Commissioner Bergosh's Animus Towards Dr. Edler Is Relevant to Her Retaliation Claims.**

Dr. Edler alleges in part that the County unlawfully retaliated against her for reporting illegal activity, specifically dangerous emergency medical services ("EMS") deficiencies. Her reports eventually led to the arrests and adjudication of four County executives, this *qui tam* action, and as detailed in FDLE Special Investigator Kennedy's arrest affidavits, substantial and sustained retaliation by the County. County employees harassed Dr. Edler, filed sham grievances against her, and encouraged others to do the same. *See, e.g.*, White Aff. 12, ECF No. 63-6; Bonoyer Aff. 20 ECF No. 63-5.[4]

From the dais and in his blog, Commissioner Bergosh joined in the harassment and retaliation again and again expressing his hostility towards Dr. Edler while championing the four arrestees and Mr. Selover (a paramedic who sued Dr. Edler and the County at Commissioner Bergosh's urging). Declaration of Jerry Maygarden (Maygarden Decl.) ¶¶ 134–36. This disparagement continued for more than a year after the County terminated Dr. Edler's employment.

Commissioner Bergosh has publicly and falsely proclaimed on television that the arrested wrongdoers have been exonerated, and he accused Dr. Edler of being an

---

[4] Mr. White and Mr. Bonoyer admitted the arrest affidavits as a factual basis for their pleas. *See* White Aff. 1, ECF No. 63-6; Bonoyer Aff. 30, ECF No. 63-5.

"abusive" and "disastrous train wreck" who "ran amok" and "destroyed the careers of good people." *See* Escambia County Board of Commissioners Meeting at 1:37:38 (October 20, 2020).[5]

Dr. Edler also has a strong reason to believe Commissioner Bergosh communicated in private with citizens about Dr. Edler, including Melissa Pino, an individual who worked in conjunction with Commissioner Bergosh and others to harass and pressure Dr. Edler. *See, e.g.*, Owens Decl. ¶¶ 43–56; Declaration of Russell Nail ¶¶ 221–25; Maygarden Decl. ¶¶ 90–93.

Commissioner Bergosh maintains a public blog wherein he has expressed hostility towards Dr. Edler, including long after her departure from County employment. Commissioner Bergosh *explicitly* blogged about Dr. Edler more than a dozen times.[6] As with some of his public statements, in some blogs, he avoided using her name including in a "parody" post.[7] Not only did he avoid using her name, but when questioned under oath, he sought to maintain this equivocation. In response to "who are you satirizing?" the transcript shows he ducked and dodged for six pages

---

[5] https://escambiacofl.civicclerk.com/Web/Player.aspx?id=834 (last visited July 21, 2023).

[6] *See, e.g.*, Blogs dated June 28, Dec 15, 17 and 31, 2019; Jan 16 and 23, 2020; Aug 12, 16, 18, 24 2021; Sept 13, 30, Oct 13, 2021; Jan 22, 2023, *available at* https://jeffbergoshblog.blogspot.com/search?q=edler (last visited July 17, 2023).

[7] November 20, 2021 Bergosh Blog W*hen the Head-Waiter Runs the Restaurant.........Part I: "Who is in Charge?*" (never mentioning Dr. Edler by name).

until finally admitting "if it was about Dr. Edler, maybe it was Dr. Edler and some other dysfunctional department heads. It's a caricature. It's a parody."[8] These six pages demonstrate Commissioner Bergosh avoided using Dr. Edler's name directly when discussing her retaliation claim.

He also uses his blog to discuss the relevant criminal cases and this case. He even admits to having *conversations* with family about such things:

> I spoke to my brother briefly, because we speak on a very frequent basis. Of course he is an attorney, and so we talk about things. And, you know, *he is very familiar* with this [Selover case] just because, you know, we talk just about every day. Both of our parents are dead, so it is just he and I. We bounce ideas off one another, and, obviously, you know, in his position he is not able to represent me; although, again, we do speak pretty frequently.

Deposition of Jeff Bergosh ("Bergosh Dep.") at 23:9–18, Ex. 1 (emphasis added); *see also* December 9, 2018 Bergosh Blog, *How Bogus, BS Lawsuits foster Disdain for Lawyers and the Law, Part I* (Dec. 9, 2018) (referencing the Complaint in this Action "And I have discussed these sorts of things, at length, with my brother").[9] It

---

[8] Bergosh Dep. 165:22 ("who are you satirizing?"); 171:21–23 ("maybe it was Dr. Edler").

[9] Available at https://jeffbergoshblog.blogspot.com/2018/12/how-bogus-bs-lawsuits-foster-disdain.html (last visited July 17, 2023); http://jeffbergoshblog.blogspot.com/2021/06 (last visited July 17, 2023).

is reasonable to infer that some of these conversations occurred through text message. Of course, the best way to be sure, is to review the spreadsheet.[10]

**B)   Commissioner Bergosh's Texts Are Relevant to the FCA Claims.**

Commissioner Bergosh's public statements also suggest relevant communications exist relating to Dr. Edler's *qui tam* claims. Commissioner Bergosh placed himself at the center of the County's provision of Medicare services making him knowledgeable about many of the False Claims Act violations alleged in the First Amended Complaint. Escambia's CMS–855B enrollment application identified him as *Delegated Individual.* Documents identify Commissioner Bergosh as the Medicare contact person and the "official delegate." *See* Ex. 2, Escambia 26813, 026838, 26844, 26854, 26856.

Commissioner Bergosh admits to speaking with his brother—who he has stated "does not represent me"—about Dr. Edler and the EMS training-related issues in this case. Bergosh Dep. 23:9–18, Ex. 1. Additionally, Commissioner Bergosh admits that his phone contains public records. Escambia County Board of Commissioners Meeting at 16:25–17:00 (Feb. 10, 2022). Given his role and involvement in the case, the spreadsheet likely contains relevant communications.

---

[10] Searching the spreadsheet for "Edler" will not identify all relevant texts if Commissioner Bergosh's texts, like his blogs and his statements from the dais, were made without speaking her name.

**IV.    The Parties Cannot Agree on the Proper Procedure for Possession, Review, and Redaction of the File.**

Dr. Edler's Counsel first notified the County that they possessed the spreadsheet on March 27, 2023, and invited a conference on the matter. Rel.'s 03/27/2023 Email, Ex. 3. The parties did not speak about it for nearly three months, until May 23, 2023. Bailey Decl. ¶ 8. Dr. Edler proposed the County first review and redact for privilege before Dr. Edler's Counsel reviewed. *Id*. Dr. Edler's Counsel followed up on June 6th when they did not get a response. *Id.*¶ 9. The County responded by accusing Mr. Owens of a crime and likewise accusing Dr. Edler's Counsel of violating the law by possessing the file. *Id*. The County also insisted it conduct a review for relevancy before Dr. Edler's team gained access to the file. *Id*.

Dr. Edler's Counsel objected to the County's position that it was entitled to review and redact for relevance. *Id*. Counsel also asked the County for authority for its accusation that they were violating the law. *Id*. Having received no response, Dr. Edler followed-up on June 14th and again June 20th. Rel.'s 06/14/23 Email, Ex. 4; Bailey Decl. ¶ 10.

The County responded, smearing Mr. Owens and asserting that Dr. Edler's Counsel's mere possession supports "criminal violations of Federal and Florida law" including Florida Statute § 817.5685, Florida Statute § 815.06, and Florida Statutes Chapter 119.071. Def.'s 06/20/23 Email, Ex. 4. The County did not identify any federal statutes. *See Id.*

Two days later, Dr. Edler proposed that the County redact anything that is privileged or qualifies as personal identification information under Florida Statute § 817.5685. Rel.'s 06/23/23 Email, Ex. 4. Dr. Edler reasserted that the County cannot redact for relevancy, particularly on a document provided to her by a third party. *Id*. Dr. Edler also represented that, if the parties were able to agree on a process, her Counsel would immediately delete the original copy. *Id*. If they could not, Dr. Edler proposed the parties cooperate to bring the matter to the Court's attention promptly; the County's eDiscovery vendor maintain a copy of the original file until resolution of the dispute; and then Dr. Edler's Counsel would destroy their copy. *Id.*

After just having accused Dr. Edler's Counsel of a crime, the County took its time in responding to the proposal. Counsel followed up on June 27th and July 7th. Bailey Decl. ¶ 7. Counsel also sent an email reiterating Dr. Edler's concerns and setting a deadline by which the County must respond before she moves the Court. Rel.'s 07/07/23 Email, Ex. 4. Dr. Edler also proposed the parties cooperate to coordinate a joint submission to the Court. *Id.*

The County responded, asking for more time and that Dr. Edler hold off on filing any motion through Friday, July 14th. Def.'s 07/08/23 Email, Ex. 4. Dr. Edler agreed. Bailey Decl. ¶ 14. The County ultimately doubled down on its position and filed its own Motion on Monday, July 17th. *Id.* at 15. It did not comment on Dr.

Edler's proposal for addressing Counsel's possession of the file or her proposal for submitting the matter jointly with the Court. *Id.*[11] Dr. Edler now responds to the County's Motion.

## LEGAL STANDARD

The County's Motion is based on the faulty premise that Dr. Edler seeks to obtain a document from it. She does not. She already has the spreadsheet in question. Rule 26(c) is not applicable in this situation because the Rule specifically provides that "[a] party or any person **from whom discovery is sought may move** for a protective order . . . ." Fed. R. Civ. P. 26(c) (emphasis added). The County lacks a basis in the Rules for its present Motion because Dr. Edler is not seeking discovery from it. On these grounds alone, the Motion should be denied.

## ARGUMENT

**I.    There Is No Basis in Law for the County's Relevancy Argument.**

The County begins by invoking an outdated discovery standard replaced nearly eight years ago. *See* Def.'s Br. 5 & 8, ECF No. 112 (defining discovery information as that which is reasonably calculated to lead to the discovery of admissible evidence). Documents and ESI are instead discoverable when they are

---

[11] The County raced to file its brief while asking Dr. Edler to hold off. It did so while its response to Dr. Edler's motion to compel and motion for sanctions remains outstanding after requesting and obtaining two extensions from the Court and representing its counsel was too ill to work.

relevant to the claims and defenses in the action and proportionate to the needs of the case. Fed. R. Civ. P. 26(b)(1). But again, Relator already possesses the file in question, so relevancy is not the appropriate analysis.

Even still, Dr. Edler has strong reasons to believe that the file contains information relating to her and about the claims and defenses in this case. For starters, Mr. Owens told her Counsel it did. Further, Commissioner Bergosh publicly represented that he had personal conversations about Dr. Edler and topics relevant to this case.

Of course, Dr. Edler could more specifically demonstrate the relevancy of the file if she was permitted to access it. Or, if the Court desires, Dr. Edler could submit the spreadsheet to the Court for an *in camera* review. Either way, the answer to this question is easily knowable. The County should not be permitted to blanketly argue a lack of relevancy—particularly where it fails to submit a sworn statement from someone who has reviewed the file challenging its relevance.

If any entries on the spreadsheet are relevant, then the document itself is relevant and discoverable even if it also contains some irrelevant content. "Indeed it is rare that a responsive document contains only relevant information." *Evanston Ins. Co. v. Republic Properties, Inc.*, No. 6:16-CV-1649-ORL-40GJK, 2018 WL 11350573, at *3 (M.D. Fla. Feb. 5, 2018). "And irrelevant information within a document that contains relevant information may be highly useful to providing

context for the relevant information." *Bartholomew v. Avalon Cap. Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011). For these reasons, the County should not be able to redact the spreadsheet.

"Redaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request." *Id.* "[R]edaction may render disclosed documents confusing or difficult to use, and lead to the litigation of collateral issues and the needless expenditure of resources." *Olberg v. Allstate Ins. Co.*, No. C18-0573-JCC, 2019 WL 6033699, at *2 (W.D. Wash. Nov. 14, 2019) (quotation omitted).

Many courts agree as relevancy redactions are widely disfavored. *See, e.g.*, *Evanston*, 2018 WL 11350573, at *3 ("To the extent that [defendant] redacted such information on the basis of irrelevance, the Court finds such actions are improper."); *ADP, LLC v. Ultimate Software Grp., Inc.*, No. 17-CV-61274, 2017 WL 7794226, at *1 (S.D. Fla. Dec. 15, 2017) ("There are numerous issues associated with allowing unilateral redactions of purportedly irrelevant information. … Accordingly, [defendant] is ordered to produce unredacted versions of all documents produced[.]"); *Bonnell v. Carnival Corp.*, No. 13-22265-CIV, 2014 WL 10979823, at *4 (S.D. Fla. Jan. 31, 2014) ("[Defendant] cannot unilaterally redact portions of

otherwise discoverable, non-privileged documents based on its own belief that portions of the documents are irrelevant to the claims in this case.").[12]

As one court notes "[l]itigants are not charged with carte blanche 'to willy-nilly redact information from otherwise responsive documents in the absence of privilege, merely because the … party concludes on its own that some words, phrases, or paragraphs are somehow not relevant.'" *Classic Soft Trim, Inc. v. Albert*,

---

[12] *See also WNE Cap. Holdings Corp. v. Rockwell Automation, Inc.*, No. CV 09-0733-WS-C, 2011 WL 13254691, at *7 (S.D. Ala. Aug. 4, 2011) ("[Defendant's] unilateral decision to redact information that it … considers … irrelevant (as will be discussed) is unacceptable."); *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, No. 20CV07959JMVJRA, 2023 WL 4418234, at *5 (D.N.J. June 16, 2023) ("The Court finds that the Non-parties improperly unilaterally redacted information contained within the challenged documents as non-responsive for relevancy."); *Olberg*, 2019 WL 6033699, at *2 ("Absent a claim of privilege, Defendants' assertion that the material at issue is irrelevant to this litigation is insufficient to justify their unilateral redactions of material from otherwise responsive documents."); *Doe v. Trump*, 329 F.R.D. 262, 275 (W.D. Wash. 2018) ("Redaction is generally an inappropriate tool for excluding information that a party considers to be irrelevant or nonresponsive from documents that are otherwise responsive to a discovery request."); *Engage Healthcare Communs., LLC v. Intellisphere*, LLC, No. 12-cv-787, 2017 WL 3624262 (D.N.J. Apr. 25, 2017) (unilateral redactions based on one party's subjective view of relevancy are improper); *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SA CV 15-00246, 2016 WL 6246384, at *2, (C.D. Cal. Feb. 23, 2016) ("[Defendant] may not redact otherwise responsive documents because those documents contain irrelevant material."); *Melchior v. Hilite Intl, Inc.*, No. 13-50177, 2013 WL 2238754, at *3 (E.D. Mich. May 21, 2013) (A subpoenaed non-party "cannot unilaterally redact portions of documents based on relevancy grounds."); *Bartholomew*, 278 F.R.D. at 452 ("Defendants must produce unredacted versions of the documents that Defendant previously produced with redactions based solely on relevance.").

No. 6:18-CV-1237-ORL78GJK, 2021 WL 724974, at *7 (M.D. Fla. Feb. 10, 2021). "This interpretation is [also] buttressed by the fact that the Federal Rules of Civil Procedure do not grant parties the power to unilaterally redact information on the basis of relevance. The Federal Rules of Civil Procedure explicitly provide when redaction may be used." *Bartholomew*, 278 F.R.D. at 452 (citing Fed. R. Civ. P. 5.2).

Redaction is further unnecessary here where, such as here, a HIPAA protective order is in place, preventing otherwise sensitive documents from being used outside of litigation.[13] Protective Order, ECF No. 25. These parties further considered confidential information in their proposed stipulated order regarding ESI discovery. ECF No. 46; *see* ESI Order § 9, ECF No. 47 (governing Confidentiality, Privacy, and Security of Information). This is sufficient.

Like the above-cited cases—and in the spirit of permitting broad discovery under the Federal Rules of Civil Procedure—this Court should not allow the County to unilaterally pick and choose the parts of the spreadsheet Dr. Edler gets to see through relevancy redactions both because they are disfavored but more importantly

---

[13] *Compare Seals v. Leath*, No. 3:19-CV-468-RAH-JTA, 2021 WL 7083331, at *5 (M.D. Ala. July 20, 2021) ("Plaintiff's position [that defendant cannot unilaterally redact irrelevant information] is supported by cases to the extent that a protective order guards the release of sensitive information. No such protective order is in place here."), *with David*, 2010 WL 1404722, at *8 ("Further, this litigation has a protective order in place that prevents non-litigants from viewing sensitive information." (quotation omitted)).

because the Court need not engage in a relevancy analysis for a spreadsheet Dr. Edler already possess.

## II.    Dr. Edler Does Not Oppose the Redaction of Privilege or Personal Information Despite the County's Assertion Otherwise.

Next, the County accuses Dr. Edler of opposing any redactions under Florida Statute § 817.5685(1), which is simply untrue and disproven through the parties' written correspondence. *Compare* Def.'s Br. 5, ECF No. 112 ("[M]erely reviewing the text messages for privileged information precludes review of other confidential information, such as personal identifying information."); *with* Rel.'s 06/23/23 Email, Ex. 4. Dr. Edler agreed to permit redaction based on statutorily prescribed personal information with an accompanying redaction log and context labels. This should be sufficient to appease the County's concerns about legally qualified personal information. *See Columbus Life Ins. Co.*, 2023 WL 4418234, at *5 ("To ease the Non-parties' concerns, [counsel] has agreed, and the Court so orders, that personal identifying information can remain redacted.").

## III.   Relator Does Not Seek the Spreadsheet Pursuant to a Public Record Request.

The County also suggests that entries depicting Commissioner Bergosh's benign personal conversations further qualify as "personal identification information" under Florida Statute § 817.5685 entitled to redaction because they are private messages. But section 817.5685(1) explicitly defines "personal identification

information" as "a person's social security number, official state-issued or United States-issued driver license or identification number, alien registration number, government passport number, employer or taxpayer identification number, Medicaid or food assistance account number, bank account number, credit or debit card number, and medical records." This definition does not shield personal communications generally.

The County also argues that Commissioner Bergosh's "personal text messages are not subject to public disclosure" under Florida Statutes Ch. 119 and *Sunny Isles Beach v. Gatto*, 338 So. 3d 1045 (Fla. Dist. Ct. App. 2022), *reh'g denied* (May 18, 2022). *See* Def.'s Br. 8–9, ECF No. 112. Dr. Edler agrees if this was a *public records request*.[14] Whether the document is a public record subject to a public records request is a red herring. Dr. Edler already obtained the file from a third party and is not making a public records request. *Gatto* is therefore inapposite, and the County cannot pretend otherwise.

---

[14] Dr. Edler is not interested in irrelevant content. She simply wishes to maintain her right to determine what is and what is not relevant as opposed to relinquish that right to the County (a non-producing party). This is particularly important because Dr. Edler already requested relevant communications and specifically asked about communications on personal devices. The County informed her responsive communications did not exist on personal devices. That appears to be inaccurate.

**IV.    There Is No Fruit of the Poisonous Tree Prohibition.**

The County's Motion repeatedly implies that, because the file was allegedly illegally obtained, Dr. Edler may not review it or use it to support her claims. This is incorrect for at least two reasons. First, the record is unclear as to whether this file was obtained through lawful means. The County cites no evidence to support its accusations, and it represents that the investigation is ongoing.

Second, even if the spreadsheet was misappropriated, this fact would not warrant exclusion in a False Claims Act case. *See United States ex rel. Gohil v. Sanofi U.S. Servs. Inc.*, No. CV 02-2964, 2016 WL 9185141, at *2 (E.D. Pa. Sept. 29, 2016) ("Even if the documents were 'misappropriated,' Ms. Decembrino's actions would not necessarily warrant exclusion of using the documents in this case."). There is no exclusionary rule or fruit-of-the-poisonous-tree doctrine in civil litigation.[15] In fact, "[f]ederal courts recognize that there is a strong public policy to

_____

[15] "In a criminal case, a warrant based on evidence discovered during an illegal search might be invalid as 'fruit of the poisonous tree.'" *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016) (citing *United States v. Karo*, 468 U.S. 705, 719, (1984)). "The fruit-of-the-poisonous-tree doctrine is a component of the exclusionary rule." *Id.* It is a "'judicially created remedy' that is meant to prevent violations of the Fourth Amendment 'through its deterrent effect.'" *Id.* (quoting *United States v. Calandra*, 414 U.S. 338, 347–48 (1974)). "Because the exclusionary rule 'exacts a heavy toll on both the judicial system and society at large' by requiring courts to ignore reliable, trustworthy evidence, … the rule does not apply unless "its deterrence benefits outweigh its 'substantial social costs[.]'" *Id.* (quotations omitted). "The Supreme Court has never held that the benefits of the exclusionary rule outweigh its costs in a civil case." *Id.* at 1267–68.

allow relators to use ... documents from the defendant in the prosecution of FCA claims." *Gohil*, 2016 WL 9185141, at *2 n.3 (collecting cases).

So, if Dr. Edler herself had taken this file from the County while she was employed there, she could use it to support her claims to blow the whistle on the County's unlawful acts. There is no compelling reason to reach a different result here where the documents were taken by a third party and given to Dr. Edler to support her claims of government fraud.

## V.    The Court Need Not Engage in the Weighing of Interests.

The County asks the Court to weigh Commissioner Bergosh's privacy interest against Dr. Edler's interests in prosecuting her claims, rather than weigh *its* interests as the moving party against hers. *See* Def.'s Br. 5, 11 (citing *McCarthy v. Barnettt Banks of Polk-Cty*, 876 F.2d 89, 91 (11th Cir. 1989). The County does not have a privacy interest in the text messages beyond protecting the personal identification information prescribed by Florida Statute, and the parties agree that information can be redacted. *See Doe*, 329 F.R.D. at 276 ("Moreover, except for the disclosure of certain refugee applicants' personal information, Defendants have not identified any prejudice that might result from the production of the redacted material here; and the privacy issue can easily be addressed by the entry of an appropriate protective order.").

To the extent that it is appropriate to weigh Commissioner Bergosh's (a non-moving third party's) privacy interests, those interests can be appropriately protected through the HIPAA Protective Order in this case. *Supra* Argument Pt. I. There is no reason to believe, as the County suggests, (Def.'s Br. 10, ECF No. 112), that Dr. Edler will (or even can) further disseminate this spreadsheet. Litigation already involves very sensitive data, including third-party patient records. Surely, Commissioner Bergosh's privacy interests in his personal text messages are not deserving of greater protection than the privacy interests of tens of thousands or more ambulance patients whose medical data is necessarily exchanged to establish the claims and defenses in this case.  Moreover, the County fails to consider the prejudice to Dr. Edler and the U.S. Government if the County successfully shields from this case communications that relate to or buttress the underlying fraud and retaliation.

Commissioner Bergosh chose to place County records on his personal phone. Owens Decl. ¶ 46 ("I also know that Commissioner Bergosh frequently used his personal cell phone for County business to the near exclusion of his County provided phone."). The resulting document has already been made available to many individuals. As Commissioner Bergosh explained, he gave his phone to the IT

department, where it was handled by at least two individuals (Bart and James).[16] The County created a spreadsheet. The record is unclear how many others, both current and former Court employees, have already seen or even possessed this document. The County cannot pretend it does not exist or that it has not already been shared.

The County has not identified any cognizable privacy interest that would require a departure from the Federal Rules of Civil Procedure and permit the County to unilaterally pre-screen third-party documents.

## **CONCLUSION**

For the above reasons, Dr. Edler respectfully requests the Court issue an Order:

- Prohibiting the County from redacting or otherwise removing content from the applicable spreadsheet that the County believes is not relevant to this action;

- Requiring the County to review and redact *only* privileged information and personal identification information as defined by Florida Statute § 817.5685(1) within fourteen days of the issuance of the Court's Order;

- Requiring the County to redact using an industry-accepted native redaction tool without deleting or otherwise manipulating the content of the spreadsheet; and

- Requiring the County to produce an accompanying privilege and personal information log no later than fourteen days following the Court's order, including but not limited to context

___

[16] Escambia County Board of Commissioners Meeting at 16:25-17:00 (Feb. 10, 2022). Available at https://escambiacofl.portal.civicclerk.com/event/492/media.

information necessary for Dr. Edler to determine what the redaction represents (i.e. when a redaction is a social security number, the log would state as much).

Respectfully submitted on July 21, 2023, by:

Jonathan Kroner
FBN 328677
JONATHAN KRONER LAW OFFICE
6001 N Ocean Dr., Ste. 806
Hollywood, FL 33019-4617
305.310.6046
jk@FloridaFalseClaim.com

Darth M. Newman
PA Bar No. 209448
LAW OFFICES OF DARTH M. NEWMAN LLC
1140 Thorn Run Rd., #601
Coraopolis, PA 15108
412.436.3443
darth@dnewmanlaw.com
(admitted *pro hac vice*)

s/Rebekah L. Bailey
Rebekah L. Bailey*
MN Bar No. 0389599
Mathew H. Morgan*
MN Bar No. 0304657
Gerald C. Robinson*
MN Bar No. 0212787
Grace Chanin*
MN Bar No. 0399969
(* admitted *pro hac vice*)
NICHOLS KASTER, PLLP
80 S. Eighth Street
IDS Center, Suite 4700
Minneapolis, MN 55402
Tel: 612.256.3200
Fax: 612.338.4878
bailey@nka.com
morgan@nka.com
grobinson@nka.com
gchanin@nka.com

*Counsel for Plaintiff-Relator*
*Rayme M. Edler, M.D.*

**N.D. Fla. Loc. R. 7.1(F) WORD COUNT CERTIFICATION**

I certify that this document complies with the type-volume limit of N.D. Fla. Loc.

R. 7.1(F) because this document contains 5,149 words. I further certify that in the

preparation of this memorandum, I used Microsoft Word for Office 365 which has

been applied to include all text, including headings, footnotes, and quotations in the

above word-count, and excluding the parts of the document exempted by N.D. Fla.

Loc. R. 7.1(F).

s/Rebekah L. Bailey
Rebekah L. Bailey
