UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA,
*ex rel.* RAYME M. EDLER, M.D.,

      Plaintiffs,

v.                                Case No. 3:20cv5503-MCR-HTC

ESCAMBIA COUNTY,

      Defendant.

_____/

ORDER

      Plaintiff-Relator Dr. Rayme M. Edler ("Dr. Edler") has filed this False Claims Act *Qui Tam* ("FCA") action against Escambia County alleging, among other things: (1) the County falsely billed various government healthcare programs for Emergency Medical Services ("EMS") that were carried out by unlicensed personnel, in contravention of applicable law and regulation ("Count I") and (2) the County submitted false claims to the federal government, namely, by miscoding the level of service provided ("Count II").[1]  Count II was added in the Second Amended Complaint, ECF Doc. 59, and is subject to a pending motion to dismiss, ECF Doc. 91.

---

[1] Each count also includes a claim of retaliation in contravention of the FCA.

This matter is before the Court on two discovery motions, one filed by Dr. Edler and one filed by the County. The first motion is Dr. Edler's motion to compel and for sanctions against the County arising from a discovery dispute that is more than a year old. ECF Doc. 106. The second is the County's motion for protective order relating to an excel spreadsheet containing text messages belonging to Commissioner Bergosh that the County alleges was improperly provided to Dr. Edler's counsel by a former County employee.[2] ECF Doc. 112. All motions have been fully briefed and are addressed below. *See* Responses, ECF Docs. 113, 115, 121, 126, 128.[3]

## I.    MOTION TO COMPEL

The motion to compel relates to three discovery requests: (1) Request Number 1, of Dr. Edler's Third Requests for Production ("RFPD III-1") (which is also the subject of Dr. Edler's motion for sanctions, *infra* Section II); (2) Request Number 6

---

[2] After the motion for protective order was filed, the Court ordered the parties to submit the spreadsheet to the Court for *in camera* inspection. ECF Doc. 119. On the same day that the County sent the spreadsheet to the Court, the County also filed a motion for reconsideration asking for the Court not to review the spreadsheet because the spreadsheet had not been authenticated. ECF Doc. 120. Regardless of whether the spreadsheet has been authenticated, the Court cannot address the County's request for a protective order without seeing the spreadsheet. Moreover, discovery on the spreadsheet would be required before the Court can determine whether it is authentic. *See Brandnameswatches Int'l, LLC v. PNC Bank, N.A.*, 2018 WL 3089325, at *2 (S.D. Fla. Jan. 18, 2018). The motion shall, thus, be DENIED.

[3] *After* the hearing, counsel for the County submitted a notice of supplemental authority (improperly docketed as a memorandum). ECF Doc. 128. As the Court was drafting this Order, Dr. Edler filed a response, ECF Doc. 129, and its own notice of supplemental authority, ECF Doc. 130. While the Court did not intend to, and does not recall, stating it was leaving the record open for further briefing, the Court has considered all late submissions in drafting this Order.

of Dr. Edler's Fourth Requests for Production ("RFPD IV-6"); and (3) Request Numbers 1, 2 and 3 of Dr. Edler's Fifth Requests for Production ("RFPD V1-3"). For the reasons discussed below, the Court finds the motion to compel should be GRANTED IN PART.

A. RFPD III-1 and IV-6

In November 2021, Dr. Edler served a third set of requests for documents on the County, seeking, among other things, claims data, work hour reports, dispatch records, and patient records from 2016 to present, which Dr. Edler subsequently agreed to limit to 12 employees. *See* RFPD III-1. The 12 employees had been identified by law enforcement as having provided ambulance services without the mandated minimal training and certifications. The County initially objected to providing this information, primarily on the ground that it was overly burdensome. Specifically, the County argued that just 8 employees alone resulted in over 24,180 calls and that it would take over 4,000 hours of personnel time for the County to go through each record for the information sought.

Although Dr. Edler initially filed a motion to compel, ECF Doc. 49, the matter was never addressed by the Court because the parties jointly requested the Court cancel the hearing on the motion and submitted a consent proposed order overruling the County's objections and requiring the production within 14 days or,

alternatively, in lieu of a production, the parties could enter into certain stipulations.[4]
ECF Docs. 60, 60-1. Although the Court did not adopt the proposed order verbatim,
it did overrule the County's objections and ordered the County to produce documents
in 14 days (by October 4, 2022). Nonetheless, now almost a year later, this same
discovery dispute is back before the Court.

When the County agreed to the consent order, the County believed that it
could work with its prior database provider, Zoll, to run queries on the existing
database for the information being requested by Dr. Edler. It appears, however, that
the Zoll reports did not provide all the information expected. Namely, claims data
that had been stored by the County's prior database provider, ESO, which relate to
about a 6-month period, was not included. Additionally, Dr. Edler believes the work
reports and dispatch records are incomplete, including that the information did not
include all government payors. Thus, Dr. Edler moves to compel responses to RFPD

---

[4] After the Zoll reports were produced, the parties discussed entering into certain stipulations to
avoid having to produce additional documents. Dr. Edler requested the parties reach a stipulation
as to the following: (1) an average claim amount for the government claims; (2) the percentage of
calls that relate to government payors; and (3) the total number of calls per identified employee.
The County agreed to the first two stipulations, but not the third. As to the third, the County argues
it could not agree "at that time" because it did not have complete information and several of the
employees at issue did not answer any calls. Although Dr. Edler asks that the Court go ahead and
enter certain stipulations as to these matters as sanctions, for the reasons discussed in Section II,
below, the Court finds sanctions to be unwarranted at this time. Moreover, as discussed at the
hearing, Dr. Edler's requested stipulations would no longer streamline the discovery because Dr.
Edler wants the stipulations *and* discovery. That does not mean, however, that the parties should
not continue to see if they can streamline the disputed issues in this case prior to trial.

III-1, as promised by the County, and also moves for sanctions for the County's failure to comply with the Court's September 30, 2022 Order.

On May 30, 2022, Dr. Edler served a Fourth Request for Production, seeking the same information as in Request III-1, for 5 additional employees. *See* Request IV-6. Although these requests were not a part of the Court's September Order, they are at issue here and the alleged deficiencies are the same as with RFPD III-1.

Under Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). As an initial matter, the County does not dispute the relevance of the information sought in RFPD III-1 or RFPD IV-6. And as discussed above, although the County initially argued the discovery was not proportional to the needs of the case, the Court overruled that objection (with the County's agreement). Thus, what remains in dispute is not whether the motion to compel as to these requests should be granted (because it should), but simply when and what the County must do to comply with its discovery obligations.

At the hearing, counsel for the parties represented that they believe they have reached some solutions with regard to the information requested in RPFD III-1 and VI-6. Based on the representations of the parties at the hearing, and to ensure the

Court does not see this issue again months down the road, the parties shall strictly comply with the following directives as to the categories of documents requested in RFPD III-1 and IV-6:

1. Work hour reports

The County shall have **fourteen (14) days** of the date of this Order to produce any work hour reports which *may* be missing or are incomplete. The Court understands the County believes the Zoll reports it has already produced include the work hour reports for all relevant time periods for the 17 requested employees and that there is nothing else to produce. Certainly, if that is the case, the Court cannot compel the County to produce records or information that do not exist. However, the County should be aware that if Dr. Edler proves otherwise after taking a Rule 30(b)(6) deposition of a Zoll representative,[5] then the Court may reconsider the imposition of sanctions. Thus, Dr. Edler shall have **fourteen (14) days** after conducting the 30(b)(6) Zoll deposition to file a renewed motion to compel as to any work reports that it believes remain missing or are incomplete. If no such motion is filed, the Court will consider this issue RESOLVED.

---

[5] Dr. Edler sought, as a sanction, to be able to take the deposition of a representative regarding the Zoll reports. The County does not object to this deposition. And the Court finds that such a deposition is appropriate regardless of sanctions. As set forth in Section II.B., below, the parties shall conduct that deposition within **thirty (30) days** of this Order.

2.  Dispatch records (CAD)

The County shall have **fourteen (14) days** of the date of this Order to produce to Dr. Edler the long-form Zoll summary reports, which the County's counsel represented is currently in counsel's possession, *and* the short summary reports, which have yet to be generated.  Dr. Edler shall have **fourteen (14) days** after conducting the 30(b)(6) Zoll deposition to file a renewed motion to compel as to any missing or incomplete dispatch records.  If no such motion is filed, the Court will consider this issue RESOLVED.

3.  Claims information

As the Court understands this issue, the Zoll reports the County produced contain incomplete claims information because it did not include the ESO data and, also, did not include all government payors.  Dr. Edler believes the issue can be resolved by having Zoll remove the employee filters when running claims information and by adding additional payors identified by Dr. Edler.  The County believes this issue can be resolved by providing a statistical sampling of the ESO data and comparing it to the Zoll data.

Within **fourteen (14) days** of the date of this Order the County shall provide the statical sampling of ESO data, referenced at the hearing, to Dr. Edler and within **seven (7) days** of receipt of that information, Dr. Edler shall advise the County whether such information is sufficient and, if not sufficient, shall meet and confer

regarding alternative means.  If the information is not sufficient and the parties are unable to agree as to a different approach for production, the County shall run the queries as suggested by Dr. Edler to omit the employee filter *and* to add the missing government payors and shall produce the reports **fourteen (14) days** after the meet and confer.

    B.  RFPD V1-3

    On December 22, 2022, Dr. Edler served a Fifth Request for Production seeking the same type of information i.e., patient care records, dispatch records, and billing records, but this time not limited to specific employees, and going back a 13-year period.  *See* Request V-1 to 3.  These requests pertain to Count II of the Second Amended Complaint, which charges the County with miscoding services provided. According to Dr. Edler, this broader request is necessary for two reasons: (1) the limitation to 17 employees may have altered the data that was produced and (2) broader information is needed for Count Two.

    The County argues these requests amount to nothing more than a fishing expedition as Dr. Edler has no personal knowledge on which to base Count II.  This argument, however, goes to the merits of the claim but, "as a general rule, a party may not resist discovery relating to a particular claim by arguing the claim lacks merit."  *See Suever v. Connell,* 2008 WL 906423 at *12 (N.D. Cal. Apr. 1, 2008). As discussed during the hearing, until the Court dismisses Count II, it remains a

claim in this litigation and Dr. Edler is entitled to discovery on the claim.  *See* Fed. R. Civ. P. 26(a).

The County also argues the production of responsive information is unduly burdensome.  When a party raises an unduly burdensome objection to the production of documents, the objecting party must submit evidence that reveals the nature of the burden.  *See Trinos v. Quality Staffing Servs. Corp.,* 250 F.R.D. 696, 698 (S.D. Fla. 2008) ("Additionally, courts should only limit discovery 'based on *evidence* of the burden involved, not on a mere recitation that the discovery request is unduly burdensome.'").  The County, however, was unable to provide any specifics to support its burden argument.  Although the County provided an affidavit from Shandra Jenkins, the County's EMS Billing Manager, in support of its opposition, the information in that affidavit is based on having individual employees review each record in the database for the requested information and does not consider whether a query can be run for the information.  ECF Doc. 115-1.

Indeed, the County was not able to provide the Court with information about how much time or expense it took to run the Zoll reports limited to the 17 employees or evidence to rebut Dr. Edler's position that, while the results may be more voluminous, the same (if not less) effort is required to run a Zoll report for all employees (limited only by government payee) as to limit the query to certain employees.  In other words, while the volume of information produced may be much

greater when not limited to a specific employee, it is not clear that the time spent running queries is greater.

While the Court agrees with Dr. Edler that the County has not shown that the requests are unduly burdensome, Dr. Edler's counsel also recognized that Dr. Edler might be able to narrow the requests or better understand what compromises might be possible with regard to the production after she has had an opportunity to depose a 30(b)(6) representative regarding the Zoll reports. Thus, given the proportionality standards[6] which the Court must consider in deciding discovery issues, the Court finds it will be more judicially efficient to have the parties further vet this issue.

Therefore, with regard to RFPD V1-3, the parties shall comply with the following directives:

- Within **thirty (30) days** of the date of this Order, Dr. Edler shall depose a 30(b)(6) representative regarding the Zoll reports and data.

- Within **seven (7) days** of the date of the deposition, the parties shall meet and confer regarding ways to narrow RFPD V1-3 or ways in which the information can be *timely* produced. Any agreement as to the production

---

[6] *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.").

of information responsive to these requests must include a requirement that the production be made within **thirty (30) days** of the deposition.

- If the parties do not reach an agreement during their meet and confer, then within **fourteen (14) days** of the date of the deposition, Dr. Edler shall file a renewed motion to compel.

- If the parties reach an agreement in the meet and confer, but upon review Dr. Edler determines the production remains insufficient or the County did not comply with the agreement, then Dr. Edler shall have **fourteen (14) days** after production is made to file a renewed motion to compel.

- The Court will consider the issues as to RFPD V1-3 fully RESOLVED if no motion is filed within the times set forth above.

II.    Request for Sanctions

Dr. Edler asks the Court to sanction the County for failing to comply with the Court's September 30 Order.  Under Rule 37(b)(2)(C), whenever a party disobeys a court order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  District courts have broad discretion to fashion appropriate sanctions for violation of discovery orders. *See e.g., Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993).

Exercising that discretion here, the Court does not find sanctions to be appropriate *at this time* because the evidence presented by both parties suggests that the County tried, albeit unsuccessfully, to comply with the Court's Order. The County was in communications with Dr. Edler regarding the Zoll reports as well as whether the parties could agree to certain stipulations that would alleviate the need for the discovery sought. Moreover, although the Court required the production to be made within fourteen (14) days, Dr. Edler did not seek relief from the Court for the County's non-compliance until June 2023, more than eight months after the County's noncompliance.

The Court will add one caveat to its ruling – the County has had long enough to figure out how to respond to relevant discovery requests and it is time for these discovery issues to be laid to rest. While the County may not want to do it, it may very well be at the point where the County simply needs to transfer the data to Dr. Edler's counsel and let them figure out how to extract what they need. Thus, while the Court does not find sanctions to be appropriate now, that may not be the case if there continues to be delays.

III.    Motion for Protective Order

In addition to the parties' dispute over Dr. Edler's discovery requests, another issue has arisen involving text messages belonging to County Commissioner Jeff Bergosh. As alleged in the County's motion for protective order, Jonathan Owens,

a former County employee, improperly (and possibly illegally) obtained an excel spreadsheet containing text messages that were downloaded from Commissioner Bergosh's cell phone to the County's server and provided that excel spreadsheet to Dr. Edler's counsel.[7]  The County seeks to prevent Dr. Edler from reviewing the information or using it in discovery and asks that Dr. Edler be ordered to destroy any and all copies of the "potentially illegally acquired text messages."

Dr. Edler, on the hand, argues she should be allowed to retain and use the excel spreadsheet because neither she nor her counsel engaged in any improper conduct to obtain the spreadsheet; it is disputed as to how Owens came into possession of the spreadsheet; and it is a document that counsel obtained outside of discovery.  Recognizing, however, that there may be privileged information or personal identification information as defined in Fla. Stat. § 817.5685, Dr. Edler's counsel immediately notified the County's counsel of the existence of the spreadsheet and asked counsel to redact such information.[8]  Dr. Edler's counsel also has not reviewed the spreadsheet.

The County filed a motion for protective order under Federal Rule 26 seeking to have the spreadsheet destroyed.  Under Rule 26, upon motion by a party or by a

---

[7] The spreadsheet was created when Commissioner Bergosh asked the County's IT personnel to download the contents of his personal cell phone prior to taking a trip out of the country. According to Commissioner Bergosh he did this because he knew there was some County business on the cell phone and wanted to preserve that information.

[8] Despite being notified in March of the spreadsheet, the County did not talk to Dr. Edler about the spreadsheet until May.

person from whom discovery is sought, and for good cause shown,[9] the Court may

enter a protective order to protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense.  Fed. R. Civ. P. 26(c)(1)(G).

As an initial matter, Rule 26 does not apply because the spreadsheet was not

obtained during discovery.  *See e.g., Lahr v. Fulbright & Jaworski, LLP*, 1995 WL

17816334 (N.D. Tex. Oct. 25, 1995) ("A court may not issue a Rule 26 protective

order to control documents obtained outside the court's formal discovery process."),

*aff'd Lahr v. Fulbright & Jaworski*, 1996 WL 34393321 (N.D. Tex. July 10, 1996).

In *Lahr*, the district court reversed the magistrate judge's entry of a protective order

precluding the use of handwritten notes that a third party stole and provided to a

party in an employment discrimination case.  *Id.*  Similarly, in *In re Rafferty*, 864

F.2d 151, 155 (D.C. Cir. 1988), the district court reversed a magistrate judge's entry

of a protective order limiting the disclosure of a document which had been

improperly obtained, finding that the employers could not "use the happenstance of

---

[9] "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted."  *Huddleston v. Bowling Green Inn of Pensacola*, 333 F.R.D. 581, 584 (N.D. Fla. 2019) (citing *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002)).  "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."  *See Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).  Ultimately, the trial court has broad discretion to decide when a protective order is appropriate and what degree of protection is required.  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Phillips*, 307 F.3d at 1211.

a discovery proceeding to place under a protective order materials not obtained through discovery." *Id.* at 155.

That, however, does not mean the County is without recourse. As the Texas court held in *Lahr*, a district court may nonetheless impose restrictions on the use of such information under its inherent power to control the litigation. *See Lahr*, 1996 WL 34393321, at *3 ("The court's power to remedy unfair litigation practices and preserve the judicial integrity is broader in scope). Thus, the Court may preclude or place other limitations on the use of a document under its inherent powers even if the document was not obtained through discovery. *Smith v. Armour Pharm. Co.*, 838 F. Supp. 1573, 1578 (S.D. Fla. 1993) ("A bright-line rule prohibiting a court from regulating the use of information or documents obtained through means other than discovery in the pending proceeding would result in inequitable consequences and could undermine the integrity of a court's judicial proceedings."); *see also In re Shell Oil Refinery v. Shell Oil Co.,* 143 F.R.D. 105 (E.D. La. 1992) (granting protective order where the PLC communicated with a current Shell employee and "surreptitiously obtained from this employee propriety documents belonging to Shell").

Here, the County seeks a protective order for two reasons. First, the County argues the spreadsheet has not been authenticated and *could* have been altered. Second, the County argues Owens obtained the spreadsheet illegally or through

improper means. Whether the spreadsheet has been or can be authenticated does not determine whether it can be obtained during discovery or retained by Dr. Edler.[10] *See, supra,* fn. 2. Also, it is unclear how Owens came into possession of the spreadsheet and, as of this writing, Owens has not been charged with any illegal conduct.[11] And it is undisputed that neither Dr. Edler nor her counsel engaged in any improper conduct to obtain the spreadsheet. Those arguments, therefore, do not advance the ball. Notably, the County does not argue the spreadsheet does not contain relevant messages[12] and concedes it contains messages that would fall under the Florida Public Records Act, Fla. Stat. § 119, et seq.

Nonetheless, when determining whether the Court should intervene in these circumstances, the Court must "balance the scales" to ensure that it does not condone or encourage litigants or any person to use illegal or improper means to obtain information, whether during or outside of discovery, to gain an unfair advantage, while at the same time not unnecessarily preventing a party from accessing information to which it is entitled. *See In re Shell,* 143 F.R.D. at 108 ("What matters is balancing the scales."). In "balancing the scales," here, the Court finds some

---

[10] The County argued that only Commissioner Bergosh has the "true" spreadsheet, but admitted that it had not compared what Commissioner Bergosh has with what Dr. Edler was provided.
[11] Owens told the Pensacola News Journal he did not do anything illegal and a thumb drive with the text messages was left on his desk at the county office. ECF Doc. 126-1 at 4.
[12] The Court found 85 instances of the word "Edler" on the spreadsheet.

protection of the spreadsheet is required and imposes the following conditions on Dr. Edler's use and retention of the spreadsheet in discovery.

First, as agreed to by Dr. Edler, the spreadsheet shall be marked CONFIDENTIAL and no information in the spreadsheet shall be shared with anyone outside this litigation or used outside this litigation.[13]  The Court will not hesitate to sanction any person or party who violates this Order.

Second, within **seven (7) days** of the date of this Order, the County shall redact all privileged information as well as personal identification information as defined in Fla. Stat. § 817.5685 from the spreadsheet that was provided to the County from Dr. Edler, and provide the redacted spreadsheet to Dr. Edler, along with a privilege log identifying what was redacted.

Third, the parties shall then have **seven (7) days** after the redacted spreadsheet and privilege log are provided to meet and confer regarding which messages are (1) relevant to this litigation or (2) involve County business and thus would be subject to production under the Florida Public Records Act, Fla. Stat. § 119.  The County shall redact any text messages which the parties jointly agree do not fall into either category.  If the parties are able to agree on what should be redacted, then the County shall provide a second redacted spreadsheet to Dr. Edler redacted for (1) privileged

---

[13] The Court understands the Pensacola News Journal has obtained a copy of the spreadsheet. Although the confidentiality of the spreadsheet may, thus, already be compromised, the parties and their counsel are nonetheless obligated by this Order to keep the information confidential.

information, (2) Fla. Stat. § 817.5685 information, and (3) mutually agreed upon clearly irrelevant and non-public information. That second redacted spreadsheet will be the spreadsheet Dr. Edler can use in discovery going forward and Dr. Edler's counsel shall immediately destroy other copies of the spreadsheet in her possession, custody, or control.

*If*, however, the parties are unable to agree on all redactions i.e., the parties dispute whether a message is relevant or a public record, then the parties shall jointly submit the list of disputed text messages to the Court for *in camera* review, and identify the nature of the dispute i.e., "Relator contends the message is relevant to show retaliation; County disagrees." The disputed list of text messages shall be submitted *in camera*, by no later than **twenty-one (21) days** from the date of this Order. Until the Court makes a determination on the disputed text messages, which it will promptly do, Dr. Edler cannot use any of the disputed text messages in discovery.

The Court understands Dr. Edler believes relevance redactions are not appropriate because the spreadsheet is a document her counsel obtained outside discovery. However, other than for purposes of annoyance, embarrassment, or harassment, the Court can find no basis for why Dr. Edler would need information that is not relevant to her claims. Also, while Dr. Edler's counsel did nothing wrong in receiving the spreadsheet and took the exact steps this Court would have expected

upon receipt of the spreadsheet, the Court also cannot ignore that the text messages at issue include personal text messages that were on a personal cell phone, many of which were intended to be private conversations.[14]  Indeed, in the line of FCA cases relied upon by Dr. Edler, the "misappropriated" document was relevant to, and used to support, the FCA claim.  *See e.g., United States ex re. Gohil v. Sanoff U.S. Servc., Inc.*, 2016 WL 9185141, at \*2 (E.D. Pa. Sept. 29, 2016) (recognizing strong public policy in favor of allowing relators to use documents, even if they have been misappropriated "*in prosecution* of FCA claims") (emphasis added).

Here, even with this limited protective order, Dr. Edler will still be able to prosecute her whistleblower claims because she will have access to relevant information on the spreadsheet and by allowing Dr. Edler to review the spreadsheet, while keeping its contents confidential, Dr. Edler can be assured that the County is not redacting information that Dr. Edler contends is relevant.  Thus, this limited protective order achieves a "balancing of the scales."

Accordingly, it is ORDERED:

1.    Dr. Edler's Motion to Compel and for Sanctions, ECF Doc. 106, is GRANTED IN PART as set forth herein.

---

[14] Even if there was no improper or illegal conduct involved, Commissioner Bergosh did not authorize any individual other than the IT personnel who downloaded the phone's contents to "access, view, copy, or distribute" his text messages or the contents of his personal cell phone. ECF Doc. 120-1.

2.     The County's Motion for Protective Order, ECF Doc. 112, is GRANTED IN PART as set forth herein.

3.     The County's Motion for Reconsideration, ECF Doc. 120, is DENIED.

DONE AND ORDERED this 25th day of August, 2023.

*/s/ Hope Thai Cannon*
_____

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**