UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**UNITED STATES OF AMERICA**
*ex rel.* **RAYME M. EDLER, M.D.,**

   **Plaintiff,**

   **v.**                                              **CASE NO. 3:20-cv-5503-MCR-HTC**

**ESCAMBIA COUNTY,**

   **Defendant.**
_____/

## ORDER

Plaintiff-Relator Rayme M. Edler filed a *qui tam* action in part pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729(a)(1)(A), (B), (G), alleging that Defendant Escambia County submitted fraudulent claims for reimbursement to the federal government. The United States has declined to intervene. *See* ECF No. 7. Now before the Court is Escambia County's Motion to Dismiss Count II of the Second Amended Complaint. ECF No. 91. Having reviewed the matter, the motion to dismiss is granted.

## I. Background[1]

Escambia County provides emergency medical services and transportation. Edler was Escambia County's Medical Director and Director of Emergency Medical Services from May 2018 to September 2021. ECF No. 59. One of the medical services provided by Escambia County is ambulance transportation which is reimbursed by the Medicare Program.[2] *See* 42 U.S.C. §§ 1395j–1395w. The amount of reimbursement that Escambia County receives for its ambulance service depends on whether the reimbursement claim was coded as an emergency versus nonemergency and whether a patient received basic life support versus advanced life support.[3] Escambia County receives a greater reimbursement if a claim is coded as

---

[1] For purposes of the motion to dismiss, the Court recites the facts as set out in the Second Amended Complaint, accepts them as true, and construes the allegations and reasonable inferences in the light most favorable to Edler. *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015) (stating courts accept the factual allegations of the complaint as true and construe them in the light most favorable to the relator when considering a Rule 12(b)(6) motion to dismiss under the False Claims Act).

[2] Set forth in Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, the Medicare program includes a subsidized health insurance program that pays for certain medical service expenses including ambulance services. *See generally* 42 U.S.C. §§ 1395j–1395w; ECF No. 59 at 7.

[3] Non-Emergency ambulance services are coded A0426 (Advanced life support) or A0428 (Basic life support). ECF No. 59 at 7-8 (citing 42 C.F.R. § 414.605). Emergency ambulance services are coded A0427 (Advance life support) or A0429 (Basic life support). *Id.* Therefore, between 2014 to 2020, "Medicare Part B reimbursed Escambia, on average, $313 for emergency services and only $199 for non-emergency services," and an extra $51 for reimbursement claims coded as advanced life support. *Id.* at 25, 33.

Page 3 of 15

an emergency and also if a patient received advanced life support in an emergency setting.  The Centers for Medicare and Medicaid Services ("CMS")[4] public database reported that from 2014 through 2020, 98% of Escambia County's claims were coded as emergency compared to nonemergency services, and 71% of its claims were coded as advanced life support compared to basic life support services.  ECF No. 97 at 25.

Edler alleges that Escambia County submitted false reimbursement claims to government healthcare programs including Medicare.  More specifically, she asserts that from 2014 to 2020, Escambia County upcoded[5] ambulance services claims.  It did this by charging the government for emergency services, which generated an additional $114 per claim, when only non-emergency services were provided, and charging for advanced life support services when only basic life support services were provided, generating an additional $51 per claim.  *See* ECF No. 59 at 26, 33.  Edler alleges that Escambia County knowingly submitted these fraudulent claims

---

[4] The CMS administers the Medicare program.  *See United States v. Specialist Doctors' Grp.*, LLC, No. 817CV2647T24JSS, 2020 WL 7138566, at *2 n.6 (M.D. Fla. Dec. 7, 2020).

[5] Upcoding is "the practice of billing Medicare [and other government healthcare programs] for services or equipment designated under a code that is more expensive than what a patient actually needed or was provided[.]" *United States v. Marder*, 208 F. Supp. 3d 1296, 1314 n.21 (S.D. Fla. 2016) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 498 n.2 (6th Cir. 2007)).

which would not have been reimbursed had the government known that Escambia County was upcoding. *Id.* at 36. Edler asserts that her "personal knowledge provides the true set of facts and exposes the lie embedded in" the CMS aggregate data—that Escambia County submitted false reimbursement claims by upcoding.[6] ECF No. 97 at 7. As medical director, Edler was responsible for "providing medical direction and oversight for Escambia County's Public Safety and Correctional Center"[7] but had minimal interactions with reimbursement claims and did not work in Escambia County's billing department. ECF No. 59 at 3.

In Count II of the Second Amended Complaint, Edler asserts an FCA claim against Escambia County, in violation of 31 U.S.C. § 3729(a)(1)(A), (B), (G).[8] Edler alleges that "much of the documentary evidence necessary to prove these allegations is in the possession of [Escambia County] and the United States." ECF No. 59 at 4.

---

[6] More specifically, Edler states that Escambia County has a disproportionate amount of emergency and advanced life support claims compared to the rest of the country, "provides all transport services in [Escambia] County including non-urgent transfers, does not employ enough paramedics to physically perform the number of 'advanced' transports for which it bills, and uses lights and sirens at a rate substantially lower than its emergency billing rate." ECF No. 97 at 23.

[7] Escambia County's Public Safety and Correctional Center handles fire rescue, emergency medical and dispatch services. ECF No. 59 at 3.

[8] Not relevant to this motion to dismiss, the Second Amended Complaint also includes additional counts pursuant the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, and the FCA alleging that Escambia County falsely billed government healthcare programs for Emergency Medical Services that were carried out by unlicensed personnel. *See* ECF No. 59.

Escambia County has now moved to dismiss Count II for failure to state a claim and lack of particularity, *see* Fed. R. Civ. P. 12(b)(6), 9(b).

## II. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. Rule 8 requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," not detailed allegations. Fed. R. Civ. P. 8(a)(2). The Court accepts the factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff, or relator in an FCA case. *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). The "complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Hunt v. Amico Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility is found where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Iqbal*, 556 U.S. at 679 (noting the plausibility inquiry presents a "context-specific task," requiring the court to draw on "judicial experience and common sense"). Mere legal conclusions lacking "adequate factual support" are not entitled to an assumption of truth. *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011); *see also Twombly*, 550

U.S. at 555 (noting "a formulaic recitation of the elements of a cause of action will not do").

In addition to the ordinary pleading rules, an FCA claim is based on fraud and therefore is subject to the heightened pleading standard of Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Urquilla-Diaz*, 780 F.3d at 1052. To satisfy Rule 9(b), the allegations must "contain sufficient indicia of reliability," *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1358 (11th Cir. 2006), and must include "particular facts about the who, what, where, when, and how of fraudulent submissions to the government," *Urquilla–Diaz*, 780 F.3d at 1052 (quoting *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) and other internal marks omitted); *see also Cooper v. Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 567 (11th Cir. 1994) (requiring FCA pleading to include facts as to time, place, and substance of the alleged fraud). Failing to meet Rule 9(b)'s pleading standards is grounds for dismissal under Rule 12(b)(6). *See United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002).

## III. Discussion

A private person may bring a federal civil *qui tam* action on behalf of the federal government for civil penalties and damages arising from false claims

submitted to the government. *See* 31 U.S.C. § 3730. The False Claims Act, 31 U.S.C. § 3729 *et seq.*, prohibits parties from knowingly (1) presenting a false claim to the government for payment; (2) making a false record or statement material to a false claim; and (3) making "a false record or statement material to an obligation to pay or transmit money or property to the [g]overnment" or concealing or improperly avoiding or decreasing "an obligation to pay or transmit money or property to the [g]overnment." *United States ex rel. Zafirov v. Fla. Med. Assocs. LLC*, No. 8:19-cv-1236, 2021 WL 4443119, at *4 (M.D. Fla. Sept. 28, 2021) (quoting 31 U.S.C. § 3729(a)(1)(A), (B), (G)).[9] However, a case must be dismissed where the claim is based on "substantially the same" allegations or transactions that were previously publicly disclosed in a federal hearing to which the government was a party, in a federal report or investigation, or in news media, unless the plaintiff was "an original source of the information," as defined in the statute. 31 U.S.C. § 3730(e)(4)(A)-(B).

Escambia moves for dismissal of Count II, arguing that it is an: (A) impermissible shotgun pleading; (B) the upcoding allegation has already been

---

[9] In sum, an FCA claim requires: "a false statement or fraudulent course of conduct, . . . made with scienter, . . . that was material, causing . . . the government to pay out money or forfeit moneys due." *United States ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340, 1346-47 (11th Cir. 2021) (quoting *Urquilla-Diaz*, 780 F.3d at 1045).

CASE NO. 3:20-cv-5503-MCR-HTC

publicly disclosed; and (C) the pleading is insufficient under Rule 9(b).  The Court finds that the pleading is insufficient under Rule 9(b).

### *A. Shotgun Pleading*

Escambia County argues that Count II is a shotgun pleading and therefore should be dismissed.  ECF No. 91 at 5.  The Court disagrees.  A shotgun pleading is defined by "the failure to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading." *Beckwith v. Bellsouth Telecomms., Inc.*, 146 Fed. Appx. 368, 371 (11th Cir. 2005).  A typical shotgun pleading "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).  Shotgun pleadings often include conclusory or vague allegations, fail to specify which defendant is responsible for each act alleged, or contain counts that present more than one discrete claim for relief.  *See Silverthorne v. Yeaman*, 668 Fed. Appx. 354, 355 (11th Cir. 2016).

Count II is not a shotgun pleading.  The incorporated paragraphs set forth factual allegations relevant to the upcoding allegations presented in Count II.  *Cf. Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (holding that a complaint

CASE NO. 3:20-cv-5503-MCR-HTC

was a shotgun pleading where each count incorporated "'General Factual Allegations' . . . while also incorporating the allegations of any count or counts that precede it"). Additionally, the Court rejects the argument that Count II presents more than one discrete claim for relief. *See* ECF No. 26 (Order finding that a count alleging violations of the FCA under 31 U.S.C. §§ 3729(a)(1)(A), (B) was not a shotgun pleading.).

### *B. Public Disclosure*

Escambia County argues that Count II must be dismissed because the upcoding allegations were publicly disclosed in a federal report—CMS aggregate data from 2014 through 2020. The Court disagrees. Actions under the FCA "cannot be based on allegations that are already publicly disclosed." *United States ex rel. Bibby v. Mortgage Investors Corp.*, 987 F.3d 1340, 1353 (11th Cir. 2021) (citing 31 U.S.C. § 3730 (2006). The public disclosure bar applies if (1) the allegations of the complaint have been "publicly disclosed" as described by statute; and (2) the allegations are "substantially the same" as allegations or transactions contained in the public disclosures; unless (3) the relator is an original source of that information, as defined in § 3730(e)(4)(B). *United States ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 (11th Cir. 2015).

CASE NO. 3:20-cv-5503-MCR-HTC

Here, the first requirement of the public disclosure bar is not met because the upcoding allegations have not been publicly disclosed. In Count II, Edler's upcoding allegations cite to a federal report—CMS aggregate data from 2014 through 2020. *See United States v. Specialist Doctors' Grp.*, LLC, No. 8:17-CV-2647-T-24, 2020 WL 7138566, at *3 (M.D. Fla. Dec. 7, 2020) (finding that "data from the CMS database is a federal report"). While the CMS aggregate data is a federal report that is publicly available, the information on the face of the CMS aggregate data alone does not disclose the alleged upcoding. Edler combined her non-public industry knowledge with CMS aggregate data to surmise that Escambia County had upcoded and therefore committed fraud. This is not sufficient to show that a public disclosure occurred.[10] *Bibby*, 987 F.3d at 1353 (finding that an allegation is not publicly disclosed when the defendant's claim to the government and the "true set of facts" provided by a relator resulted in a conclusion that fraud occurred). The Court need

---

[10] More specifically, the Eleventh Circuit presented the following formulaic analysis to determine whether a relator's allegations have been publicly disclosed: "one generally must present a submitted statement or claim (X) and the true set of facts (Y), which shows that X is untrue. These two things together allow the conclusion (Z) that fraud has occurred." *United States ex rel. Bibby v. Mortgage Investors Corp.*, 987 F.3d 1340, 1353 (11th Cir. 2021) (quoting *United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 841 F.3d 927, 935 (11th Cir. 2016)). Therefore, when "only one element of the fraudulent transaction is in the public domain (e.g., X), the qui tam plaintiff may mount a case by coming forward with either the additional elements necessary to state a case of fraud (e.g., Y) or allegations of fraud itself (e.g., Z)." *Id.* (quoting *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 655 (D.C. Cir. 1994)).

not address the other prongs of the public disclosure bar analysis since "the first prong becomes dispositive where the plaintiff's allegations have not been publicly disclosed." *Id.* at 1353.

### C. Pleading Sufficiency

Escambia County argues that Count II fails to meet the particularity requirement of Rule 9(b) and must therefore be dismissed. Edler opposes, contending that the allegations in Count II are sufficiently particular. The Court agrees with Escambia County that the allegations of fraud lack the particularity required under Rule 9(b) and are in part conclusory in nature.

Rule 9(b)'s particularity requirement is satisfied by pleading "precisely what statements were made in what documents or oral representations or what omissions were made," "the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making)" the statement or representation, the content of the statement and the manner by which it misled the government, and also "what the defendants obtained as a consequence of the fraud." *Clausen*, 290 F.3d at 1310 (quoting *Ziemba v. Cascade In'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)); *see also Urquilla-Diaz*, 780 F.3d at 1052 (Rule 9(b) requires pleading FCA claims with particular facts about "the who, what, where, when, and how of fraudulent submissions to the government" (internal quotations omitted)).

CASE NO. 3:20-cv-5503-MCR-HTC

An indicia of reliability is key and may be satisfied either through Rule 9(b)'s particularity requirement, pleading "facts as to time, place, and substance of the defendant's alleged fraud," *id*., or in some circumstances, through the relator's "direct knowledge of the defendants' submission of false claims based on her own experiences and on information she learned in the course of her employment," *United States v. HPC Healthcare, Inc*., 723 F. App'x 783, 789 (11th Cir. 2018); *United States ex rel. Mastej v. Health Mgmt. Assocs., Inc*., 591 F. App'x 693, 704 (11th Cir. 2014) (stating that "case law has indicated that a relator with direct, first-hand knowledge of the defendants' submission of false claims gained through her employment with the defendants may have a sufficient basis for asserting that the defendants actually submitted false claims"). This means the heightened pleading standard may be relaxed somewhat "in FCA cases where the relator has personal knowledge of the fraudulent conduct or personally participated in it." *United States ex rel. Dildine v. Pandya*, 389 F. Supp. 3d 1214, 1218–19 (N.D. Ga. 2019).

Edler, however, did not plead with particularity that any false claim was actually submitted or that Escambia County made or used the false claims. It is uncontested that Edler has neither provided exact billing data for the alleged fraudulent claims nor copies of specific claims submitted to the government. *Cf. United States ex rel. Osheroff v. Tenet Healthcare Corp.*, 2012 WL 2871264, at *6

CASE NO. 3:20-cv-5503-MCR-HTC

(S.D. Fla. July 12, 2012) (finding "indicia of reliability" where relator relied on public filings showing revenue from Medicare and an exhibit that included examples of claims). Edler argues nonetheless that she had knowledge of the defendants' submission of false claims gained through her employment sufficient to establish a "sufficient basis for asserting that the defendants actually submitted false claims." *Mastej,* 591 F. App'x at 704 (stating that "there is no per se rule that an FCA complaint must provide exact billing data" or a "representative sample claim"). Even though Edler, as medical director, may have had "direct knowledge of the Escambia EMS Department's business model, structure, equipment, staffing and training," Edler did not work in the billing department and does not allege that she had firsthand experience in billing or tracking false claims or saw other employees draft or submit false claims. *See* ECF No. 97 at 26; *Mastej*, 591 F. App'x at 704 (A relator "must explain the basis for her assertion that fraudulent claims were actually submitted."); *see generally Clausen*, 290 F.3d at 1311 (finding a pleading defect in the lack of specific information about the actual submission of a claim to the government; the presence of a claim or statement to the government is "the sine qua non of a False Claims Act violation").[11]

---

[11] Edler states that "much of the documentary evidence necessary to prove these allegations is in the possession of [Escambia County] and the United States." ECF No. 59 at 4.

CASE NO. 3:20-cv-5503-MCR-HTC

In Count II, Edler claims that after receiving "improperly inflated reimbursements," Escambia County did not meet its "obligation to repay and refund to the [g]overnment the amount of the overpayment." ECF No. 59 at 48 (citing 31 U.S.C. § 3729(a)(1)(G)). A claim pursuant to 31 U.S.C. § 3729(a)(1)(G) is known as a "reverse false claim," in which "the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated."[12] *United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 653 (5th Cir. 2004). Therefore, "[i]t is of primary importance that a plaintiff show that the defendant owed a definite and clear obligation to the United States[.]" *United States v. Aggarwal*, No. 6:03-cv-117, 2005 WL 6011259, at *7 (M.D. Fla. Feb.10, 2005) (citing *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1237 (11th Cir.1999). By stating that Escambia

---

The particularity requirement cannot be relaxed because the documents are not in Edler's control. In cases where courts have relaxed the particularity requirement, the court has found that the relator had a basis for personal knowledge or personally participated in some way, which lent an indicia of reliability to the allegations, something absent here. *See, e.g., Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1230 (11th Cir. 2012) (stating that relator's allegations of the accounting records, his role as accounts manager for the company, and his involvement with the patient accounts provided sufficient support for the claim).

[12] To state a reverse false claim, the plaintiff must allege: "(1) a false record or statement and (2) the defendant's knowledge of the falsity; (3) that the defendant makes, uses, or causes to be made or used a false statement; (4) for the purpose to conceal, avoid, or decrease an obligation to pay money to the government; and (5) materiality." *U.S. ex rel. Mastej v. Health Mgmt. Assocs., Inc.*, 869 F. Supp. 2d 1336, 1346 (M.D. Fla. 2012).

County violated the FCA and therefore violated 31 U.S.C. § 3729(a)(1)(G), Count II only provides a conclusory obligation which is insufficient to survive a motion to dismiss.  *See United States v. AIDS Healthcare Foundation, Inc.*, No. 14-cv-61301-KMW, 2016 WL 11783286, at *7 (S.D. Fla. Jul. 19, 2016) (stating that "a conclusory statement that an 'obligation to pay' arose from [a] submission of false claims does not suffice; to state a reverse false claim, Relators must plead facts sufficient to show that AHF acted with the purpose of concealing, avoiding, or decreasing an actual 'obligation to pay' the government"); *United States ex rel. Schaengold v. Mem'l Health, Inc.*, No. 4:11-CV-58, 2014 WL 6908856, at *21 (S.D. Ga. Dec. 8, 2014) (stating that "the relator had not identified an independent obligation which the defendant, by its alleged false statement, sought to conceal, reduce, or otherwise avoid").

Accordingly, Defendant's Motion to Dismiss Count II of the Second Amended Complaint, ECF No. 91, is **GRANTED**.

**DONE AND ORDERED** this 7th day of September 2023.

*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

CASE NO. 3:20-cv-5503-MCR-HTC